IN THE
UNITED STATES COURT OF APPEALS
FOR THE
ELEVENTH CIRCUIT
ATLANTA, GEORGIA

_____

APPEAL NO: 18-10809-B

_____

UNITED STATES OF AMERICA
Plaintiff/Appellee

Versus

DAVID PAUL LYNCH
Defendant/Appellant

_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

6:17-CR-00096-GAP-KRS-1

_____

INITIAL BRIEF

_____

MARK J. O'BRIEN, ESQUIRE
RACHAEL E. REESE, ESQUIRE
O'Brien Hatfield, P.A.
Bayshore Center
511 West Bay Street, Suite 330
Tampa, Florida 33606
(813) 228-6989
Florida Bar No. 0160210
Florida Bar No. 0111396
COUNSEL FOR APPELLANT

APPEAL NO: 18-10809-B

*United States of America v. David Paul Lynch*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26-1, I hereby certify that the persons listed below are interested in the outcome of this case:

1.  Bentley, A. Lee, III, former United States Attorney;

2.  Covington, Hon. Virginia M. Hernandez, United States District Judge;

3.  Elm, Donna Lee, Federal Public Defender;

4.  Gerard, Eric, Assistant United States Attorney;

5.  Goldsmith, Stanley A., Esq.;

6.  Hatfield, Victoria E., Esq.;

7.  Hughes, Irina, Federal Public Defender's Office;

8.  Lopez, Maria Chapa, United States Attorney;

9.  Lynch, David Paul, defendant-appellant;

10. McDonell, Colin P., Assistant United States Attorney;

11. Minor victims whose identities are protected;

12. Muench, James A., Assistant United States Attorney;

13. Muldrow, W. Stephen, former Acting United States Attorney;

14. Nebesky, Suzanne C., Assistant United States Attorney;

15. O'Brien, Mark J., Esq.;

16. Peresie, Jennifer Lynn, Assistant United States Attorney;

17. Porcelli, Hon. Anthony E., United States Magistrate Judge;

18. Reese, Rachael E., Esq;

19. Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division

20. Sweeney, Kathleen M., Federal Public Defender's Office; and

21. Walczak, Bozena, movant;

22. Walczak, Marian, movant; and

23. Wilson, Hon. Thomas G., United States Magistrate Judge.

No publicly traded company or corporation has an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant, DAVID LYNCH, does not request oral argument. It is respectfully submitted that the arguments and facts are clear on the face of the record on appeal; this Honorable Court will not need assistance in resolving this action.

## CERTIFICATE OF STYLE AND FONT

This brief is written in 14 point Times New Roman. To the best of Counsel's information and belief, it is 10 pitch.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS…………......…………...……..……I

STATEMENT REGARDING ORAL ARGUMENT…………........……….…...II

CERTIFICATE OF STYLE AND FONT…………......……………...……....…..II

TABLE OF CONTENTS…………......……………………………….…..…...IV

TABLE OF AUTHORITIES…………......………………………….…..…..VI

STATEMENT OF JURISDICTION…………......……………….……….…...1

STATEMENT OF THE ISSUES…………......…………………….………...1

STATEMENT OF THE CASE…………......………………………….……...2

    **(i)**    **Course of Proceedings and Disposition in the Court Below**…...…..2

    **(ii)**    **Statement of the Facts As Revealed At Trial**………….……...8

    **(iii)**    **Standard of Review**………………………………….…...22

SUMMARY OF THE ARGUMENT………………………………….……...23

ARGUMENT AND CITATIONS OF AUTHORITY………………………24

  **I.**    **THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO GIVE A LIMITING INSTRUCTION TO THE JURY REGARDING THE GOVERNMENT'S INTRODUCTION OF HEARSAY STATEMENTS FROM UNAVAILABLE DECLARANTS WHICH RESULTED IN HARMFUL ERROR**………..…………24

    a.  Limiting Instruction…………………………………………24

    b.  Insufficient Charging Indictment…………………………28

    c.  Jury Not Instructed on Attempt………………………………...33

IV

d. Harmful Error…………………………………………..……………36

**II.    THE DISTRICT COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL WHEN THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUSTAIN A CONVICTION**………………….39

CONCLUSION……………………………………………………..…48

CERTIFICATE OF COMPLIANCE……………………….…………...48

CERTIFICATE OF SERVICE……………………………..……………..49

# TABLE OF AUTHORITIES

## Cases

*California v. Roy*, 519 U.S. 2 (1996)……………………………….………..36

*United States v. Adams*, 83 F.3d 1371 (11th Cir. 1996)……………………….29

*United States v. Browne*, 505 F.3d 1229 (11th Cir. 2007)………………….…..22

*United States v. Charles*, 313 F.3d 1278 (11th Cir. 2002)………………….…..44

*United States v. Daniels,* 685 F.3d 1237 (11th Cir. 2012)……………………….41

*United States v. Descent,* 292 F.3d 703 (11th Cir.2002)……………….…...……39

*United States v. Eckhardt*, 466 F.3d 938 (11th Cir. 2006) ……………….…..……22

*United States v. Facey*, 386 Fed. Appx. 910 (11th Cir. 2010)……………..….…..22

*United States v. Gaudin*, 515 U.S. 506 (1995) ……………………….………….…..47

*United States v. Goetz*, 746 F.2d 705 (11th Cir. 1984)………………….…………..47

*United States v. Gonzalez*, 975 F.2d 1514 (11th Cir. 1992)………….…………..24

*United States v. Gray*, 260 F.3d 1267 (11th Cir. 2001)……………….….…..31, 32

*United States v. Herrera*, 931 F.2d 761 (11th Cir. 1991)…………….………..22

*United States v. Hooks*, 353 Fed. Appx. 320 (11th Cir. 2009)……..……….…..45

*United States v. Jordan,* 582 F.3d 1239 (11th Cir.2009)….…………………..28

*United States v. Kim*, 435 F.3d 182 (2d Cir. 2006)….………………….………..43

*United States v. Lee*, 603 F.3d 904 (11th Cir. 2010) ………..……………..…...35, 36

*United States v. McCrimmon*, 362 F.3d 725 (11th Cir. 2004)…………….……..39

*United States v. Mercer,* 541 F.3d 1070 (11th Cir. 2008)…………………….…..39

*United States v. Miranda*, 197 F.3d 1357 (11th Cir. 1999)…………………......24

*United States v. Morris*, 20 F.3d 1111 (11th Cir. 1994)…………………………..24

*United States v. Perez-Tosta*, 36 F.3d 1552 (11th Cir. 1994)……………………..44

*United States v. Pierson*, 544 F.3d 933 (8th Cir. 2008)……………………..*passim*

*United States v. Riquene*, 552 Fed. Appx. 940 (11th Cir. 2014)……………...35, 40

*United States v. Root*, 296 F.3d 1222 (11th Cir. 2002)…………………………..46

*United States v. Salman*, 378 F.3d 1266 (11th Cir. 2004)………….……………..40

*United States v. Schmitz*, 634 F.3d 1247 (11th Cir. 2011)………………………..29

*United States v. Vera*, 701 F.2d 1349 (11th Cir. 1983)…………………………..40

*United States v. Woodruff*, 296 F.3d 1041 (11th Cir. 2002)…………...……..*passim*

*United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994)……………………..41

*United States v. Yeager*, 331 F.3d 1216 (11th Cir. 2003)……………………..25, 36

**<u>Statutes</u>**

18 U.S.C. § 2251……………………………...…………………………...……*passim*

18 U.S.C. § 2252…………………………………………………………....……5

18 U.S.C. § 2422…………………………………………………………….……35

18 U.S.C. § 2423……………………………………………………………3, 5, 45

18 U.S.C. § 3231…………………………………………………………....……1

28 U.S.C. § 1291…………………………………………………………….…1

**<u>Rules</u>**

Fed. R. Crim. P. 29…………….…………………………………………….…*passim*

## STATEMENT OF JURISDICTION

Title 28 U.S.C. § 1291 provides that the court of appeals shall have jurisdiction of appeals from all final decisions of the district court of the United States except where a direct review may be had in the Supreme Court.

The United States District Court, Middle District of Florida, Tampa Division, had jurisdiction pursuant to Title 18 U.S.C. § 3231. This is an appeal from the sentencing and Final Judgment entered by the District Court on March 1, 2018. (Doc. 125). Appellant filed his Notice of Appeal on March 1, 2018. (Doc. 127).

## STATEMENT OF THE ISSUES

Whether the district court abused its discretion by denying the Appellant's request for a limiting instruction after the government introduced inadmissible hearsay from unavailable declarants and ultimately resulted in harmful error?

Whether the district court erred in denying the Appellant's motion for judgment of acquittal when the evidence was insufficient to prove the charged offense?

## <u>STATEMENT OF THE CASE</u>

### i.  Course of Proceedings and Disposition in the Court Below

On January 26, 2017, a federal grand jury issued a two-count Indictment against the Appellant. (Doc. 5). The Appellant was charged with one count of Receipt of Child Pornography and one count of Possession of Child Pornography. (Doc. 5). On April 27, 2017, a federal grand jury returned a Superseding Indictment, wherein two additional counts were added against the Appellant. (Doc. 26). In addition to the previously charged two counts, the Appellant was charged with two counts of Production of Child Pornography, in violation of Title 18 United States Code Section 2251(a) and (e). (Doc. 26). On August 2, 2017, a Second Superseding Indictment was filed against the Appellant, wherein numerous new counts were added against the Appellant. (Doc. 44). A final and Third Superseding Indictment was filed on September 6, 2017. (Doc. 58).

Pursuant to Count One, the Appellant was charged with on or about June 2005, using and persuading and attempting to use and persuade a minor, "Liza," to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct, that is, a video titled "Video in 2," knowing and having reason to know that such visual depiction would be transported in interstate and foreign commerce, and the visual depiction was produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any

2

means, including by computer, and the visual depiction was actually transported in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a) and (e). (Doc. 58). Count Two charged the Appellant with an identical offense as Count One, except that the video title differed: "Liza.avi". (Doc. 58).

Pursuant to Count Three, the Appellant was charged with on or about June 2005, using and persuading and attempting to use and persuade a minor, "Liza," to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct, that is, an image titled "DCP_2340," knowing and having reason to know that such visual depiction would be transported in interstate and foreign commerce, and the visual depiction was actually transported in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a) and (e). (Doc. 58 at 3). The Appellant was charged in Count Four and Five identically as he was in Count Two, except that the image titles differed: "DCP_2341" was listed in relation to Count Four and "DCP_2342" was listed in relation to Count Five. (Doc. 58 at 3-4).

Count Six charged the Appellant with knowingly travelling in foreign commerce, from the Middle District of Florida to the Philippines, for the purpose of engaging in illicit sexual conduct with another person, in December 2006, in violation of Title 18, United States Code, Section 2423(b). (Doc. 58 at 4). Pursuant

to Count Seven, the Appellant was charged with on or about December 2006, using and persuading and attempting to use and persuade a minor, "Erica," to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct, that is, one video, knowing and having reason to know that such visual depiction would be transported in interstate and foreign commerce, and the visual depiction was produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, including by computer, and the visual depiction was actually transported in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a) and (e). (Doc. 58 at 5).

Pursuant to Count Eight, the Appellant was charged with on or about December 2006, using and persuading and attempting to use and persuade a minor, "Erica," to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct, that is, an image titled "DCP_3638," knowing and having reason to know that such visual depiction would be transported in interstate and foreign commerce, and the visual depiction was actually transported in interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a) and (e). (Doc. 58 at 6). The Appellant was charged in Count Nine identically as he was in Count Eight, except that the minor's name was "Rica," the

image title was "IMGP0231," and the date was in or about August 2007. (Doc. 58 at 6).

Count Ten alleged that between on or about November 11, 2015, and on or about December 6, 2016, the Appellant did knowingly receive a visual depiction using any means and facility of interstate and foreign commerce, when the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and the visual depiction was of such conduct, in violation of Title 18, United States Code Section 2252(a)(2) and (b)(1). (Doc. 58 at 7). Count Eleven alleged that in or about December 2016, the Appellant knowingly attempted to travel in foreign commerce, from the Middle District of Florida to the Philippines, for the purpose of engaging in illicit sexual conduct with another person, in violation of Title 18 United States Code, Section 2423(b) and (e). (Doc. 58 at 7-8).

Lastly, Count Twelve alleged that on or about December 30, 2016, the Appellant did knowingly possess and access with the intent to view a matter which contained a visual depiction that had been shipped and transported using any means and facility of interstate and foreign commerce and that had been shipped and transported in and affecting interstate and foreign commerce, when the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and the visual depiction was of such conduct, in violation of Title 18, United States Code Section 2252(a)(4)(B) and (b)(2). (Doc. 58 at 8).

On October 10, 2017, the Appellant proceeded to trial. (Doc. 90). Over the course of several days, the government presented testimony and evidence in the form of texts and chat messages. During the testimony of government witness Agent Buck, trial counsel for the Appellant requested a limiting instruction that the statements made, either written form or audio, by individuals other than the Appellant, could not be used as substantive evidence of age given the fact that they were hearsay statements. (Doc. 149 at 196). The government argued that the statements were not hearsay because the issue was not about whether what they said was true, but rather if the Appellant believed the statements to be true. (Doc. 149 at 197). The district court acknowledged that it would address the issue at a later point in the trial and give the parties time to discuss a proposed solution.

At the close of the government's case, the Appellant orally moved for a judgment of acquittal. (Doc. 150 at 147). The Appellant's motion was denied. (Doc. 150 at 148). Following the Appellant's case-in-chief, the Appellant again moved for a judgment of acquittal. (Doc. 150 at 222).

During the charge conference, trial counsel again brought up the issue of giving the jury a limiting instruction regarding the hearsay statements that were offered to prove the truth of the matter asserted, made out-of-court by declarants that did not testify at the Appellant's trial. Counsel argued that a limiting instruction was appropriate in order to explain to the jury that the hearsay

6

statements were not substantive evidence of age and instead, solely evidence admitted to place the Appellant's own statements into context. (Doc. 150 at 214). The district court allowed the Appellant and the government to try and come to an agreed upon limiting instruction, but that was to no avail. (Doc. 150 at 215). Thereafter, the district court ruled that it was not inclined to give a limiting instruction and declined the request. (Doc. 150 at 216).

On October 13, 2017, the jury found the Appellant guilty as charged. (Doc. 101). Following the jury's verdict, the United States Probation Office conducted a presentence investigation interview and compiled a report for the district court's consideration. (Doc. 119). Prior to sentencing, the Appellant submitted a Sentencing Memorandum to the district court. (Doc. 121). Attached to said memorandum was a forensic mental health evaluation conducted by Dr. Valerie McClain. Dr. McClain ultimately diagnosed the Appellant with suffering from unspecified depressive disorder, pedophilic disorder and alcohol use disorder. (Doc. 121 at 4). Dr. McClain also noted that the Appellant had several mitigating factors including a history of mental health and substance abuse problems. (Doc. 121 at 4).

On February 22, 2018, the Appellant proceeded to his sentencing hearing before the Honorable Judge Virginia M. Hernandez Covington. The Appellant was ultimately sentenced to three thousand, nine hundred sixty (3,960) months

imprisonment, to be followed by fifteen (15) years supervised release. The prison term specifically consisted of terms of 360 months on each of Counts One through Nine, and Eleven; 240 months on Count Ten, and 120 months on Count Twelve. The district court ordered for Counts Two through Twelve to run consecutively to each other and to Count One. (Doc. 123).

Following the judgment of the district court, the Appellant filed his Notice of Appeal. (Doc. 127). The Appellant currently remains incarcerated.

**ii.  Statement of the Facts as Revealed at Trial**

Detective Kevin Bunch with the City of Bradenton Police Department testified on behalf of the government. (Doc. 148 at 29). Detective Bunch was involved in the execution of a search warrant at the Appellant's residence in Venice, Florida on December 30, 2016. (Doc. 148 at 31). Government's Exhibits 902 through 948 were photographs taken during the search warrant, and subsequently admitted into evidence. (Doc. 148 at 33). One item photographed during the search, and later seized by law enforcement, was a Dell desktop computer found in bedroom "D". (Doc. 148 at 37). The desk where the computer was located contained items with the Appellant's name on it, as well as documents with handwritten notes on them. (Doc. 148 at 38). Law enforcement determined that bedroom "I" was the Appellant's bedroom inside the residence. While doing the search, law enforcement realized that the bedroom door to the Appellant's

room was locked, and law enforcement was forced to kick down the door. Within the bedroom law enforcement found numerous electronic devices, hard drives, cameras, camcorder tapes and compact discs. (Doc. 148 at 40). In addition to items found directly in the bedroom, Detective Bunch testified about two closets within the bedroom. In the first closet, an additional laptop was located. (Doc. 148 at 47). In the second closet, numerous compact disks and camcorder tapes were located. (Doc. 148 at 49).

Detective Bunch testified that several of the CDs taken from the closet had titles on the CD, containing the words "Phils Trip.", which Detective Bunch believed meant Philippines. (Doc. 148 at 53-54). Detective Bunch next identified Government's Exhibit 942, which was a box of the mini-tapes. The box and tapes were labeled with the name "Liza." (Doc. 148 at 54). Detective Bunch admitted that he had not seen any of the footage actually on any of the tapes. (Doc. 148 at 57). Following the testimony of Detective Bunch, the government read off fourteen (14) stipulations for the jury. (Doc. 148 at 59-62).

Federal Bureau of Investigation Special Agent Anastasia Cioni was the next witness called to testify for the government. (Doc. 149 at 20). On December 29, 2016, Agent Cioni received information from the FBI office in Tampa that the Appellant would be traveling to San Francisco. Agent Cioni was tasked with assisting other task force officers with the arrest of the Appellant at the airport.

(Doc. 149 at 21). Agent Cioni proceeded to the gate where the plane was deporting from in order to perform the arrest. The airplane was going to the Philippines. (Doc. 149 at 22). The Appellant had a carry-on bag with him at the time of his arrest, that was taken into custody and later inventoried by the FBI. (Doc. 149 at 25). Within the bag were several different types of medication, U.S. currency in the amount of $552.58, five microSD cards, a Samsung tablet, four Canon cameras, a prepaid SIM card, Samsung cell phone, a Garmin GPS, a SanDisk microSD card, four iPhones, an AT&T cell phone and additional memory cards. (Doc. 149 at 33-37). In addition to the items taken into custody from the Appellant's bag, Agent Cioni also identified items that were inside the bag but ultimately shipped back to Tampa, Florida. Agent Cioni identified the items from a photograph that had been taken at the time of the search. (Doc. 149 at 43). Agent Cioni identified female underwear, batteries, and vibrators (a form of sex toy). (Doc. 149 at 43-44).

Sarah Novak, a contract linguist with the Federal Bureau of Investigation, testified next for the government. Ms. Novak's job duties included translating and interpreting specific languages for the bureau, including Tagalog which is the national language of the Philippines. (Doc. 149 at 54). Ms. Novak was asked to translate two items in the Appellant's case: an audio recording and a videotaping. (Doc. 149 at 57). Government's Exhibit 501B was the audio recording that Ms. Novak translated into English. Government's Exhibit 501C was an excerpt of the

audio translation. (Doc. 149 at 59). Ms. Novak admitted that there was no discussion on the audio regarding the age of the female speaker. (Doc. 149 at 60).

Government's Exhibit 608A was the videotape recording of conversations. (Doc. 149 at 60). Government's Exhibit 608G was a copy of the translation and transcription of the video recording from 608A. (Doc. 149 at 61). Ms. Novak testified that there was a discussion regarding the age of the female named Erica on the video, but no discussions about Erica being an adult. (Doc. 149 at 63). Ms. Novak then defined several words. "Salsal" was defined in English as meaning masturbating or ejaculating; "balbon" was defined in English as a person that is hairy; and "puki" was defined in English as vagina or a female genital organ. (Doc. 149 at 63-64).

Following the testimony of Ms. Novak, the government read additional stipulations to the jury. (Doc. 149 at 69). It was stipulated that

> "between June 2009 and December of 2016, the Yahoo e-mail account Roselia_Villegas09@Yahoo.com belonged to and was accessed by a person in the Philippines.
>
> Second, that the photographs marked as Government Exhibits 701, 702, 703, 704, 706 and 707 are fair and accurate depictions of messages sent to and from the defendant, David Paul Lynch, on the dates indicated therein and as found on the defendant's iPhones, Government Exhibits 700 and 705, which were recovered from the defendant at the San Francisco airport on or about December 30th, 2016."

(Doc. 149 at 69:9-18).

Sarasota Police Department Detective Megan Buck was the next witness called to testify for the government. (Doc. 149 at 72). Detective Buck was involved in the arrest of the Appellant and was the lead investigator on his case. (Doc. 149 at 73). Detective Buck received information through Operation Swift Traveler that ultimately led her to start the investigation into the Appellant. (Doc. 149 at 80). Detective Buck got involved in Sarasota County because the Appellant was residing in Venice, Florida. (Doc. 149 at 80). The e-mail address, wheaton_knight89@yahoo.com was an e-mail address provided to Detective Buck, and stipulated by the parties as belonging to the Appellant. (Doc. 149 at 81). Detective Buck subpoenaed the records for the e-mail account, and was able to get the IP addresses of where the e-mail had been logged in at. (Doc. 149 at 84). Thereafter, Detective Buck drafted search warrants and was able to get the actual e-mails, and chat transcripts, themselves. (Doc. 149 at 84-85). The government then admitted several items found pursuant to the search warrant into evidence. Detective Buck identified the items as exchanges that contained alleged child pornography and photographs of the Appellant. (Doc. 149 at 87-88).

Pursuant to Detective Buck's review of the e-mails, she opined that the Appellant had traveled to the Philippines in between the times of 2007 and December of 2016. (Doc. 149 at 89). Detective Buck confirmed through Customs and Border Patrol records that the Appellant had traveled between the Philippines

and the United States. (Doc. 149 at 90). Detective Buck also identified the items inside the Appellant's passport that reflected times he traveled outside of the United States. (Doc. 149 at 93).

Detective Buck then testified that she had reviewed the chat transcripts and the age of the girls that the Appellant appeared most interested in where girls between ages 13 and 14. (Doc. 149 at 94). Pursuant to an exchange on May 7, 2015, the Appellant identified that his dream girl was 13 to 14 and hairy. (Doc. 149 at 95). The discussions on said day were with an individual that Detective Buck believed was acting as a facilitator of meetings between the Appellant and young girls. (Doc. 149 at 96). Detective Buck then read excerpts from a conversation had on January 25, 2011. (Doc. 149 at 97-100).

Detective Buck next discussed images that she found in the Appellant's e-mails. Specifically, images of a young girl named Denise were found in the Appellant's e-mails. (Doc. 149 at 102). Denise was not the sender of the pictures, but instead, a woman named Rose who lived in the Philippines was sending them to the Appellant. (Doc. 149 at 102). Over fifty images of Denise were found in the e-mails. (Doc. 149 at 103). The Government then called attention to Exhibit 11, which was an e-mail sent by Rose on November 26, 2015. (Doc. 149 at 103). Detective Buck then discussed Exhibit 10, which was an e-mail sent on November 11, 2015, which contained child pornography. (Doc. 149 at 105). Detective Buck

went through several exhibits and pointed out conversations between the Appellant and Rose, as well as pictures that were exchanged. (Doc. 149 at 106-113).

The government then admitted numerous exhibits without objection of items taken from the laptop and other items found in the Appellant's carry-on bag on the date of his arrest. (Doc. 149 at 115-130). The government also admitted images and a video that were recovered from the Dell laptop, which Detective Buck identified as alleged child pornography. (Doc. 149 at 131-132). Images and videos taken from the Western Digital hard drives were also admitted into evidence. (Doc. 149 at 133-134).

Detective Buck testified that there were several alleged minors on the devices and the files on the devices. Specifically, there were three minors besides Denise that Detective Buck saw: Liza, Erica and Rica. (Doc. 149 at 149). Detective Buck then went through several conversations that were within the government's exhibits. Detective Buck testified that the Appellant was in the Philippines on June 15, 2005, which was a date marked on some of the pictures involving "Liza." (Doc. 149 at 163). Detective Buck then identified several videos, taken from different angles, of interactions between the Appellant and Liza. (Doc. 149 at 164-167). Detective Buck also found still images from the video itself, that had been created by the Appellant. (Doc. 149 at 170). Detective Buck testified that Counts Three, Four and Five of the Indictment were related to those still images, which

14

were photographs of Liza and her vagina. (Doc. 149 at 171). Detective Buck went through several different chats between the Appellant and other individuals. (Doc. 149 at 171-190).

Detective Buck then testified about Government's Exhibit 608A, which was a video of Erica. (Doc. 149 at 206). Detective Buck identified that in the video, the Appellant was seen with a camera in his hand. Pictures were found from the time when the video was recorded, and were charged in Count Eight of the indictment. (Doc. 149 at 208). Detective Buck then identified a photograph of Rica, that was charged in Count Nine. (Doc. 149 at 210). Detective Buck believed that the Appellant thought Rica was thirteen years old per the chat messages exchanged. (Doc. 149 at 211).

Detective Buck then went through text messages that were allegedly with Denise Villais, who was eleven or twelve years old at the time of the events. (Doc. 149 at 225). Her investigations revealed that the Appellant was in the Philippines in August of 2016, and had marked off in an excel spreadsheet that he was spending time with Rose and Denise on several consecutive days. (Doc. 149 at 227).

On cross-examination, Detective Buck admitted that they were looking for the minors and for the facilitators in order to "find out what age they are." (Doc. 149 at 240). Detective Buck further admitted that because they did not have

evidence of the victim's ages, they were actually missing important evidence in the case. (Doc. 149 at 241). Detective Buck then discussed the fact that she had no other direct knowledge as to the age of the individuals reflected in the photographs except for what was said in conversations. The government did not have birth certificates, driver's licenses, social security cards, or any other identifying information that could help determine an exact age of the individuals. (Doc. 149 at 242).

Walter Lambert, M.D., was called as the government's next witness. (Doc. 150 at 8). Dr. Lambert was a general pediatrician and worked in pediatric child abuse cases. Based on his experience, he was able to testify about his medical opinion whether a person in a video or image was a minor. Specifically, Dr. Lambert categorized someone's age into four separate categories. (Doc. 150 at 18). The first category is under the age of twelve, meaning there are no signs of puberty. The second category would be under eighteen, meaning they are in the process of puberty but not done yet. The third category is unable to determine, meaning he cannot tell from the picture. The last category is adult and adult features, meaning somebody who looks like an adult. The last category did not mean that the person wasn't under 18, just that Dr. Lambert was not comfortable to say that they are not. (Doc. 150 at 18). Dr. Lambert admitted that there is no way to

tell an exact age from a photo or video because the range is very great. (Doc. 150 at 19).

Dr. Lambert was provided with images and some videos that were relevant in the Appellant's case. (Doc. 150 at 21). Dr. Lambert then went through several of the government's exhibits and offered his opinion. Dr. Lambert viewed Government's Exhibit 30 of Liza, and opined that it was "a person who is in puberty, but early-ish in puberty, and so under the age of 18 years old." (Doc. 150 at 24). Government's Exhibit 127, an image of Liza, was viewed by Dr. Lambert and he determined she was under the age of 18 in the earlier part of puberty. (Doc. 150 at 25). Dr. Lambert was then shown Exhibits 126, 128, 131 and 132, which were all images of Liza. He opined that in each photo the female was in puberty, not done with puberty, and under the age of 18 years old. (Doc. 150 at 26). Dr. Lambert viewed two videos that depicted the same female Liza, but he was not comfortable making a determination as to the female's age range from the video alone. (Doc. 150 at 27).

Dr. Lambert next testified about Government's Exhibit 304, an image of Erica, and opined that she was under the age of 18. (Doc. 150 at 28). Dr. Lambert next testified about 15C, a picture of Denise, and he opined that she was somebody who was in puberty and under the age of 18 years old. (Doc. 150 at 30). Dr. Lambert next offered his opinion about Exhibit 305, which was a picture of Erica,

and stated she was still in puberty and under 18. (Doc. 150 at 31). Dr. Lambert was then shown Exhibits 309, 310 and 312, which were images of Rica, of which Dr. Lambert believed were images of some under 18 years old. (Doc. 150 at 31).

On cross-examination, Dr. Lambert admitted that although he does not solely rely on the Tanner scaling categories, he does consider them when placing individuals within a particular age range. (Doc. 150 at 45). Dr. Lambert was then confronted with two abstracts from two different papers. (Doc. 150 at 96). The first abstract quoted as follows:

> The issue of juvenile pornography has seen an increase in the past few years of the number of expert opinions requested to forensic pathologists, pediatricians, and other various experts within the forensic and medical fields concerning the age of represented individuals.
>
> Regardless of the entity of a problem, no actual method exists which can allow us to give an objective and scientific answer, particularly in the post-pubertal stage. Using parameters related to sexual maturation can be very dangerous. Nonetheless, some experts will insist with similar types of "expertises." This study aims at verifying the ability of different experts in assessing age of post-pubertal individuals represented in pornographic material.
>
> Results underlying the difficulties and nature uncertainties of age evaluation by visual observation of photographic material, particularly when the subjects have reached the sexual maturation stage; and, therefore, in verifying whether the individual is above or below 18 years of age (an important age limit for most countries as far as this type of crime is concerned).
>
> Furthermore, the study stresses the need to both search for an [alternate] approach and to apply extreme caution [in] judicial evaluation.

18

(Doc. 150 at 96-97). The second reading, titled "Inaccuracy of Age Assessment from Images of Post-Pubescent Subjects in Cases of Alleged Child Pornography" read as follows:

> Despite frequent medical expert testimony, authoritatively stating that images of individuals who are post-pubescent indicate age less than 18 and, therefore, child pornography, developmental experts have noted that a scientific basis for such estimation is lacking.
>
> In fact, recent studies have demonstrated a high degree of inaccuracy in such estimates and that the stage of breast development often used as indicative of age under 18 years is present in a substantial percentage of adult women.
>
> Ten images of adult women from legitimate pornographic sites promoting youth images were shown to 16 pediatric endocrinologist experts in evaluating maturation, who determined whether or not the individuals represented were under 18 years of age. They also provided information about what features were most important in their evaluations.
>
> Sixty-nine percent of the 160 estimates were that the images represented females under 18 years of age. There was wide variability in the designation of importance of various features of maturation in reaching conclusions, with breast development and facial appearance considered most important.
>
> This study confirms that medical testimony, even by experts in adolescent development, can deem images of adult women selected for their youthful appearance to be under 18 two-thirds of the time. Thus, important as prosecuting users of Rickets material may be, justice requires the avoidance of testimony that is not scientifically based.

(Doc. 150 at 97-99).

Dr. Lambert then admitted that he had never been to Asia or the Philippines. (Doc. 150 at 101). Dr. Lambert also admitted that nutrition plays a role in human development, and a female's diet or their culture can play a role in their development. (Doc. 150 at 103). Dr. Lambert further conceded that when looking at pictures of potential child pornography versus videos, an expert has to be careful because a photograph is only two-dimensional. (Doc. 150 at 104-105).

Laura Haney was the next witness called to testify for the government. (Doc. 150 at 124). Ms. Haney, who had only worked at the FBI for one year, was able to determine when a particular photograph had been taken. (Doc. 150 at 126-133). Casey Waugh, a criminalist at the Sarasota Police Department, was the government's final witness. (Doc. 150 at 135). Ms. Waugh was responsible for taking a photograph that had a fingerprint in the photograph, processing the photograph on Photoshop, and then comparing the photograph to the subject that was provided to her. (Doc. 150 at 139). Ms. Waugh testified that a comparison of the photograph to the Appellant was a match. (Doc. 150 at 141-142). On cross-examination, Ms. Waugh admitted that someone who was committing a crime, and did not want to get caught, would likely wear gloves to avoid leaving fingerprints. (Doc. 150 at 143).

Dr. Arlan L. Rosenbloom was called as a witness for the Appellant. (Doc. 150 at 151). Dr. Rosenbloom testified about his background and his interactions

with individuals in Southeast Asia. Dr. Rosenbloom then explained that individuals growing up in Southeast Asia may not mature or look like Americans at certain ages. (Doc. 150 at 171). Specifically, females in Southeast Asia have documented a later onset of menstrual periods. (Doc. 150 at 172).

Dr. Rosenbloom then discussed the study that was read into evidence during Dr. Lambert's testimony. Dr. Rosenbloom testified that the study was significant because it showed that even professionals in evaluating maturation were not reliable as determining whether images depicted females under or over 18 years of age. (Doc. 150 at 180). Dr. Rosenbloom was then asked about the photographs and videos that were used as evidence in the Appellant's case. (Doc. 150 at 181). Dr. Rosenbloom "found no evidence that one could say with any degree of medical certainty that the individuals in those photographs and videos were under 18 years of age." (Doc. 150 at 181).

### iii. Standard of Review

I.     The Court of Appeals reviews the district court's refusal to give a particular jury instruction in a criminal case for abuse of discretion. *United States v. Eckhardt*, 466 F.3d 938 (11th Cir. 2006).

II.     We review *de novo* a district court's denial of a motion for judgment of acquittal on sufficient of evidence grounds. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007). "In determining whether sufficient evidence supports a conviction, we must view the evidence in the light most favorable to the government and decide whether a reasonable fact finder could have reached a conclusion of guilt beyond a reasonable doubt." *United States v. Facey*, 386 Fed. Appx. 910. 913 (11th Cir. 2010)(citing *United States v. Herrera*, 931 F.2d 761, 762 (11th Cir. 1991)). Furthermore, a "jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.*

## SUMMARY OF THE ARGUMENT

The district court abused its discretion when it refused to give the jury a limiting instruction on the use of hearsay evidence that was admitted throughout the government's case. The district court's error is reversible because the requested instruction was correct, was not substantially covered by the charge actually given to the jury, and the instruction dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the Appellant's ability to conduct his defense.

It was error for the district court to deny the Appellant's motion for judgment of acquittal because the evidence was not sufficient in that a reasonable fact finder could have reached a conclusion of guilty beyond a reasonable doubt. Specifically, the Untied States failed to prove that the victims in the photographs and videos were actually minors under the age of eighteen. Additionally, the United States failed to prove that the Appellant traveled, or attempted to travel, to the Philippines with the required intent of engaging in a sexual act with a minor. As a result, the Court should find that the Appellant's judgment and conviction should be vacated.

<u>**ARGUMENT AND CITATION OF AUTHORITY**</u>

**I.   THE DISTRICT COURT ABUSED ITS DISCRETION WHEN IT REFUSED TO GIVE A LIMITING INSTRUCTION TO THE JURY REGARDING THE GOVERNMENT'S INTRODUCTION OF HEARSAY STATEMENTS FROM UNAVAILABLE DECLARANTS WHICH RESULTED IN HARMFUL ERROR**

The district court abused its discretion when it refused to give a limiting instruction to the jury regarding the government's introduction of hearsay statements from unavailable declarants, which ultimately resulted in harmful error to the Appellant.

　　a.  <u>Limiting Instruction</u>

"The failure to give a limiting instruction is error only when such an instruction is required." *United States v. Miranda*, 197 F.3d 1357, 1360 (11th Cir. 1999). Where a defendant requests a limiting instruction, and the district court denies the request, the error "is reviewed under an abuse of discretion standard." *United States v. Gonzalez*, 975 F.2d 1514, 1516 (11th Cir. 1992).

An abuse of discretion standard of review is appropriate here because the Appellant requested a limiting instruction at the time that the hearsay evidence was presented to the jury, and again by counsel at the time of the charge conference. *See, United States v. Morris*, 20 F.3d 1111, 1115, FN3 (11th Cir. 1994) (finding that "[t]here is no need to object to a court's specific denial of a request for a jury

instruction. The presentation of the request and its denial are sufficient to preserve the issue for appeal.").

In explaining the abuse of discretion standard, this Court has stated, "[t]he failure of a district court to give an appropriate instruction is reversible error where the requested instruction (1) was correct; (2) was not substantially covered by the charge actually given; and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Yeager*, 331 F.3d 1216, 1222-1223 (11th Cir. 2003) (quotations omitted).

The Appellant was charged with twelve different counts surrounding his alleged involvement with minors in the Philippines. Counts One, Two, Three, Four, Five, Seven, Eight and Nine all alleged that the Appellant produced and attempted to produce child pornography depicting a minor. As instructed by the district court, the Appellant could only be found guilty of those counts if the government proved, beyond a reasonable doubt, that "an actual minor, that is, a real person who was less than 18 years old, was depicted."[1] In offering proof of these counts, the government introduced hearsay statements through text messages, chat messages, and e-mails that contained hearsay statements of unavailable declarants.

---

[1] The government was required to prove two additional elements, but for purposes of the instant argument those are irrelevant.

During the testimony of government witness Agent Buck, who was responsible for introducing a majority if not all of the hearsay statements, trial counsel requested a limiting instruction that the statements made, either written form or audio, by individuals other than the Appellant, could not be used as substantive evidence of age given the fact that they were hearsay statements. (Doc. 149 at 196). The government argued that the statements were not hearsay because the issue was not about whether what they said was true, but rather if the Appellant believed the statements to be true. (Doc. 149 at 197). The government specifically argued that

> "[t]he effect on the here (sic) in this instance is what the defendant believed; and the reason why that is important is because the production count – production of child pornography counts here are charged as attempts. As Miss Peresie rightly pointed out in the trial brief, what the defendant believed is essential; and if the defendant believed that these were underage minors and, thus, tried to produce pornographic images of them, he had attempted to produce child pornography."

(Doc. 149 at 198). The district court acknowledged that it believed the government was correct, but would address the issue at a later point in the trial and give the parties time to discuss a proposed solution. (Doc. 149 at 199).

During the charge conference, trial counsel again brought up the issue of giving the jury a limiting instruction regarding the hearsay statements that were offered to prove the truth of the matter asserted, made out-of-court by declarants that did not testify at the Appellant's trial. Counsel argued that a limiting

instruction was appropriate in order to explain to the jury that the hearsay statements were not substantive evidence of age and instead, solely evidence admitted to place the Appellant's own statements into context. (Doc. 150 at 214). The district court allowed the Appellant and the government to try and come to an agreed upon limiting instruction, but that was to no avail. (Doc. 150 at 215).

> GOVERNMENT: Your Honor, the government's position remains, I think, in accordance with the Court's ruling, that the objection which was overruled was based on the fact that this was not hearsay at all. It was a hearsay objection. The Court, in the government's view, properly ruled that it was for the effect on the hearer, the listener, citing the *Rivera* case to which Your Honor just alluded and, therefore, no instruction is needed.

> DISTRICT COURT: I agree. I'm not going to give a limiting instruction.

(Doc. 150 at 216).

The district court's finding that the statements were not hearsay, and therefore, a limiting instruction was not necessary was an abuse of discretion. As will be highlighted in subsection (c) below, the government was required to prove, pursuant to the instructions read to the jury, that in order to convict the Appellant on eight charged counts, "an actual minor, that is, a real person who was less than 18 years old, was depicted." (Doc. 100 at 12). As a result, the effect on the hearer, which was the government's argument for the statements admissibility, was irrelevant. The only way that the government's argument on the statements' admissibility would have been legally correct would have been if the government

27

(1) adequately charged the Appellant with attempting to produce child pornography or alternatively, (2) if the government actually sought a conviction on attempting to produce child pornography, evidenced by what they opted to instruct the jury on.

b. Insufficient Charging Indictment

The district court's finding that the statements were not hearsay, and its subsequent refusal to provide the jury with a limiting instruction, was a further abuse of discretion because the only way the statements would not have been hearsay would have been if the Appellant was properly charged with Attempted Production of Child Pornography in the Indictment. Without adequately charging the Appellant with Attempt, the Appellant's belief about the victim's age was not relevant and the only reason the government could have wanted the messages admitted was to offer substantive proof of the victim's purported age.

"An indictment is considered legally sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Jordan,* 582 F.3d 1239, 1245 (11th Cir.2009) (citation and quotations omitted). However, "[e]ven when an indictment tracks the language of the statute, it must be accompanied with such a statement of the facts

and circumstances as will inform the accused of **specific offense**, coming under the general description, with which he is charged." *United States v. Schmitz*, 634 F.3d 1247, 1261 (11th Cir. 2011) (emphasis added). On appeal, the reviewing court is required to find the indictment sufficient "unless it was so defective that it did not, by any reasonable construction, charge an offense for which the defendant was convicted." *United States v. Adams*, 83 F.3d 1371 (11th Cir. 1996).

The offenses of production of child pornography and attempted production of child pornography are significantly different in the elements the government must prove, and the types of evidence they would present in order to meet their burden of proof. For example, pursuant to 18 U.S.C. § 2251(a), in order for the Appellant to be found guilty of production of child pornography, the government must prove three things beyond a reasonable doubt:

(1) An actual minor, that is, a real person who was less than 18 years old, was depicted;
(2) The Appellant used or persuaded the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction, of the conduct; and
(3) Either (a) the Appellant knew or had reason to know that the visual depiction would be mailed or transported in interstate or foreign commerce; (b) the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means; or (c) the visual depiction was actually transported in interstate or foreign commerce.

(Doc. 100 at 12). Contrarily, in order to prove the crime of <u>attempted</u> production of child pornography, the government must prove four elements beyond a reasonable doubt:

> "(1) **that the defendant believed during the time period alleged in the indictment that the child named in the indictment was under the age of eighteen**; (2) that the defendant attempted to use, persuade, induce, entice or coerce that child to engage in sexually explicit conduct; (3) that the defendant voluntarily and intentionally engaged in this behavior for the purpose of producing a visual depiction of such conduct; and (4) that the materials used to attempt to produce the visual depiction were mailed, shipped, or transported, including by computer, in interstate or foreign commerce."

*United States v. Pierson*, 544 F.3d 933, 938 (8th Cir. 2008) (emphasis added).

Just as there are differences in the elements the government would be required to prove for these two offenses, the types of evidence that would be admissible and relevant would differ entirely. For example, if the government was required to prove that the Appellant believed that the child named in the indictment was under the age of eighteen, evidence of the Appellant's thoughts and conversations about the alleged children would be admissible. However, if that was not an issue in dispute, the Appellant's belief as to the alleged child's age would not be relevant.

Pursuant to the Third Superseding Indictment, the Appellant was charged in eight separate counts with production of child pornography. Specifically, each count charging said offense stated that from some date, the Appellant "did use and

persuade and attempt to use and persuade a minor, [victim's name] to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct, that is [the name of the video or photograph], knowing and having reason to know that such visual depiction would be transported in interstate and foreign commerce, and the visual depiction was produced using materials that had been mailed, shipped, and transported in interstate and foreign commerce by any means, and the visual depiction was actually transported in interstate and foreign commerce", in violation of 18 U.S.C. § 2251(a) and (e). (Doc. 58). What the Third Superseding Indictment does not contain is reference to the mens rea requirement for attempted production, resulting in the Indictment being insufficient.

In *United States v. Woodruff*, 296 F.3d 1041 (11th Cir. 2002), the defendant appealed and argued, amongst other claims, that the indictment filed against him was insufficient because it did not expressly state that the crime was committed "knowingly." The defendant argued it was insufficient because it only alleged that he committed "robbery and did unlawfully take and obtain personal property … by means of actual and threatened force, violence, and fear of immediate injury." *Id.* at 1046 (internal quotations omitted). In analyzing the defendant's claim, the Court cited to the case of *United States v. Gray*, 260 F.3d 1267 (11th Cir. 2001). "In analyzing Gray's argument, we explained that 'an indictment is not defective simply because it fails to allege mens rea so long as the allegation that the crime

was committed with the requisite state of mind may be inferred from other allegations in the indictment.'" *Id.* at 1046 (*citing Gray*, 260 F.3d at 1283).

Unlike the indictment in *Woodruff*, the indictment in the instant case did not set forth the mens rea for attempted production and the requisite state of mind could not be inferred from other allegations in the indictment. As identified above, when a defendant is charged with attempted production of child pornography, the government is required to prove a mens rea element. Specifically, the government must prove that the Appellant believed during the time period alleged in the indictment that the child named in the indictment was under the age of eighteen. The Third Superseding Indictment does not contain any language similar to that required element, nor does it contain any facts within the Indictment that could allow the inference that the crime was committed with the requisite state of mind. Had the government simply included the alternative of "the Appellant did use and persuade and attempt to use and persuade a minor, [victim's name] **or an individual that the Appellant believed was under the age of eighteen at the time of the offense**…" the Indictment would have been sufficient. However, that was not the case and as a result, the government's argument and district court's reasons for denying the Appellant's request was erroneous.

### c. Jury Not Instructed on Attempt

The district court's finding that the statements were not hearsay, and its subsequent refusal to provide the jury with a limiting instruction, was a further abuse of discretion because the only way the statements would not have been hearsay would have been if the government sought a conviction of attempted production and had the jury instructed as such. Without an instruction on attempt, the Appellant's belief about the victim's age was not relevant and the only reason the government could have wanted the messages admitted was to over substantive proof of the victim's purported age.

Pursuant to *United States v. Pierson*, 544 F.3d 933 (8th Cir. 2008), a case relied on by the government in it's trial brief (Doc. 88), in order to prove the crime of *attempted* production of child pornography, the government must prove four elements beyond a reasonable doubt:

> "(1) **that the defendant believed during the time period alleged in the indictment that the child named in the indictment was under the age of eighteen**; (2) that the defendant attempted to use, persuade, induce, entice or coerce that child to engage in sexually explicit conduct; (3) that the defendant voluntarily and intentionally engaged in this behavior for the purpose of producing a visual depiction of such conduct; and (4) that the materials used to attempt to produce the visual depiction were mailed, shipped, or transported, including by computer, in interstate or foreign commerce."

*Pierson*, 544 F.3d at 938 (emphasis added). In the instant case, the government did not request that the jury be instructed on the required elements of intent. As a

result, the jury was only instructed on actual production of child pornography, and

attempt in general. Pursuant to the attempt jury instruction,

> In some cases, it's a crime to attempt to commit an offense – even if
> the attempt fails. In this case the Defendant is charged in Counts One,
> Two, Three, Four, Five, Seven, Eight and Nine with attempting to
> produce child pornography, and in Count Eleven with attempting to
> travel in foreign commerce for the purpose of engaging in illicit
> sexual conduct.
>
> The Defendant can be found guilty of an attempt to commit an offense
> only if both of the following facts are proved beyond a reasonable
> doubt:
>
> First: That the Defendant knowingly intended to commit the crime;
> and
>
> Second: The Defendant's intent was strongly corroborated by his
> taking a substantial step toward committing the crime.
>
> A "substantial step" is an important action leading up to committing
> of an offense – not just an inconsequential act. It must be more than
> simply preparing. It must be an act that would normally result in
> committing the offense.

(Doc. 100 at 26). The instructions for attempt did not advise the jury about the

mens rea element. Specifically, the jury was never instructed during the jury

charge that the government only needed to prove that the Appellant believed,

during the time period alleged in the Indictment, that the child named in the

indictment was under the age of eighteen.

Although the Eleventh Circuit Pattern Jury Instructions do not name this

element under "attempt", the government was well aware of the elements it was

required to prove, per its trial brief. Further, other instructions within the Eleventh Circuit Pattern Jury Instructions are instructive on this exact same issue. For example, if a defendant is charged with Attempted Coercion and Enticement of a Minor to Engage in Sexual Activity, in violation of 18 U.S.C. § 2422, the elements that the government must prove are similar to those required in the instant case.[2] What is most instructive about that pattern instruction is the requirement that the government prove that "at the time, the Defendant believed that [individual named in the indictment] was less than 18 years old). (Eleventh Circuit Pattern Jury Instructions (Criminal Cases) O92.3 (2018)). The instruction goes further to instruct the jury that "[i]t is not necessary for the Government to prove that the intended victim was in fact less than 18 years of age; but it is necessary for the Government to prove that Defendant believed such individual to be under that age." *Id.*

The government was aware, prior to trial, that attempted production is legally different than actual production of child pornography. Pursuant to the government's own trial brief,

> "ordinarily in a production case 'evidence relating to [the defendant's] perception of the victim's age [is] irrelevant.' *United States v. Riquene,* 522 Fed. Appx. 940, 944 (11th Cir. 2014).

---

[2] This Court has even held that Sections 2422(b) and 2251(a) and (e) proscribe related conduct. *See, United States v. Lee*, 603 F.3d 904 (11th Cir. 2010).

Attempted production is different, however, because the crime involves the defendant's *intent* to use and persuade a child to produce child pornography and his taking of a substantial step to do that. A defendant can be guilty of attempted production even if the persons in the visual depictions are not actually real children. *See United States v. Lee*, 603 F.3d at 904, 913 (11th Cir. 2010) (holding that the defendant could be convicted under Section 2251 for "attempting to use a fictitious minor to produce child pornography"); *see also United States v. Pierson*, 544 F.3d 933, 938 (8th Cir. 2008) (affirming a conviction for attempted production of child pornography based on evidence that the defendant "believed that the undercover profile was a minor"). Accordingly, given the charges in this case, evidence related to the defendant's perception of the victim's ages is relevant."

(Doc. 88 at 2). As a result, the government bore the burden of making sure that the jury was adequately instructed on all offenses it intended to prove.

     d. <u>Harmful Error</u>

The district court's rejection of the Appellant's argument that the statements were hearsay, and thereafter rejecting the Appellant's request for a limiting instruction, was an error so harmful that it had substantial and injurious effect or influence in determining the jury's verdict. *See, California v. Roy*, 519 U.S. 2, 5, 117 S.Ct. 337, 338, 136 L.Ed.2d 266 (1996) (holding that error is constitutionally harmful if "the error is substantial and injurious effect or influence in determining the jury's verdict"). As identified in *Yeager*, when an instruction is requested and that request is denied, but the instruction dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the

Appellant's ability to conduct his defense, this Court must find that the district court abused its discretion.

As identified by counsel during trial, a limiting instruction would have advised the jury that the hearsay statements were not to be used as substantive evidence or proof that the victims were under the age of 18 years old. Because the Appellant was not properly charged with attempt, or the jury properly instructed on attempt, the only offense that the jury could convict the Appellant on was actual production of child pornography. Therefore, the limiting instruction would have been imperative to make sure that the hearsay statements were not being used by the jury as evidence that the victims were actually minors under the age of 18, an element that the government was required to prove.

The messages and e-mails introduced by the government were the only direct evidence of how old the minor victims allegedly were. The only other evidence presented on their purported age was through the government's own expert, who was impeached on his ability to actually say, with any degree of medical certainty, how old the girls were. The government's own witnesses admitted that they were looking for the minors and for the facilitators in order to "find out what age they are." (Doc. 149 at 240). Detective Buck further admitted that because they did not have evidence of the victim's ages, they were actually missing important evidence in the case. (Doc. 149 at 241). Detective Buck then

discussed the fact that she had no other direct knowledge as to the age of the individuals reflected in the photographs except for what was said in conversations. The government did not have birth certificates, driver's licenses, social security cards, or any other identifying information that could help determine an exact age of the individuals. (Doc. 149 at 242).

Due to the lack of evidence presented to support a finding that the victims were actually minors and under the age of 18, a lack of a limiting instruction allowed the jury to use the hearsay statements as substantive evidence of the minors' purported ages. This error was further highlighted by the question asked by the jury during deliberations. Specifically, deliberations, the jury asked the district court "if the defendant believed Liza, Erica, Rica, and Denise were under the age of 18, parentheses, whether or not they were, is that sufficient to satisfy the condition that they be a minor?" (Doc. 151 at 102). The jury was sent an answer to the question at 1:27 p.m., and they reached their verdict by 2:07 p.m. The jury's question, and its quick return with a guilty verdict, clearly revealed that it believed the evidence showed that the Appellant believed the alleged victims were under the age of 18, which they could have only found based on the messages introduced by the government. Without the limiting instruction, the jury was able to use the messages to convict the Appellant. further, because the jury was never instructed on attempted production, it was erroneous for the jury to even consider the

Appellant's belief regarding their ages. As a result, per *Roy*, this Court should find that rejecting the Appellant's limiting instruction was an error so harmful that it had substantial and injurious effect or influence in determining the jury's verdict. Thus, the Appellant is entitled to a new trial.

## II. THE DISTRICT COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL WHEN THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUSTAIN A CONVICTION

The Appellant timely moved for a judgment of acquittal and therefore, this Court must review the sufficiency of the evidence. *United States v. McCrimmon*, 362 F.3d 725 (11th Cir. 2004). We review both a challenge to the sufficiency of the evidence and the denial of a Rule 29 motion for judgment of acquittal *de novo. United States v. Mercer,* 541 F.3d 1070, 1074 (11th Cir.2008) (per curiam); *United States v. Descent,* 292 F.3d 703, 706 (11th Cir.2002) (per curiam). "[W]e view the evidence in the light most favorable to the government," making all reasonable inferences and credibility choices in the government's favor, and then "determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." *Mercer,* 541 F.3d at 1074. We will uphold a Rule 29 motion denial if we "determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." *Descent,* 292 F.3d at 706 (quotation marks and citation omitted).

However, "[a] conviction must be reversed, if a reasonable jury must necessarily entertain a reasonable doubt as to the defendant's guilt." *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir. 1983). In the instant case, the district court should have granted a judgment of acquittal under Fed. R. Crim. P. 29(b) and because the court did not, this Court must reverse the convictions. *United States v. Salman*, 378 F.3d 1266 (11th Cir. 2004).

The Appellant was charged in Counts One, Two, Three, Four, Five, Seven, Eight and Nine with producing child pornography depicting a minor. Pursuant to 18 U.S.C. § 2251(a), in order for the Appellant to be found guilty of this crime, the government must prove three things beyond a reasonable doubt:

(1) An actual minor, that is, a real person who was less than 18 years old, was depicted;

(2) The Appellant used or persuaded the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction, of the conduct; and

(3) Either (a) the Appellant knew or had reason to know that the visual depiction would be mailed or transported in interstate or foreign commerce; (b) the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means; or (c) the visual depiction was actually transported in interstate or foreign commerce.

(Doc. 100 at 12). Knowledge of the victim's age is not an element of § 2251. *United States v. Riquene*, 552 Fed. Appx. 940 (11th Cir. 2014).

Not only did the government (1) fail to adequately charge the Appellant with attempted production of child pornography and (2) fail to adequately instruct the

jury on the appropriate law surrounding attempted production of child pornography, the Appellant's judgment reflects that he was found guilty and adjudged guilty of the offense of "Production of Child Pornography" in violation of 18 U.S.C. § 2251(a), rather than Attempted Production of Child Pornography. (Doc. 125). As a result, the Appellant's knowledge of the victim's age is not an element, nor is the Appellant's belief of how old the victim was at the time. Instead, the government was only required to prove the three elements cited above. However, the government failed to prove that an actual minor, that is, a real person who was less than 18 years old, was depicted.

Similarly, in Count Ten, the Appellant was charged with knowingly receiving or distributing any depiction of minors engaging in sexually explicit conduct. Likewise, in Count Twelve, the Appellant was charged with knowingly possessing and accessing with the intent to view a matter which contained a visual depiction that involved the use of a minor engaging in sexually explicit conduct. (Doc. 100 at 22). Again, in both Counts Ten and Twelve, the government was required to prove that an actual minor was being depicted. *See, United States v. Daniels,* 685 F.3d 1237 (11th Cir. 2012) (finding that the government is required to prove that the alleged victim was, in fact, less than eighteen years of age); *see also, United States v. X-Citement Video, Inc.*, 513 U.S. 64, 115 S.Ct. 464, 470, 130 L.Ed.2d 372 (1994) (discussing an early proposal of section 2251 and the Justice

Department's thoughts on it. The Justice Department discussed deleting the word "knowingly" from section 2251 because if left in the statute, "the bill might be subject to an interpretation requiring the Government to prove the defendant's knowledge of everything that follows knowingly, including the age of the child. We assume that it is not the intention of the drafters to require the Government to prove that the defendant knew the child was under age sixteen but merely to prove that the child was, in fact, less than age sixteen…").

A review of the evidence presented at trial will lead this Court to find that the government did not prove, beyond a reasonable doubt, that the alleged victims involved were actual minors under the age of 18 years old. The only evidence presented by the government, that would support a possible finding, was the testimony of Dr. Lambert. However, that testimony was significantly impeached by the Appellant. Specifically, the methodology used by Dr. Lambert to come up with his ultimate opinion was shown to be erroneous. Then, after being confronted with the literature which essentially debunked his reasons for opining that the females depicted in the videos and photographs were under the age of 18, Dr. Lambert also admitted that sometimes, experts have to be careful when looking at videos and pictures of potential child pornography because a photograph is only two-dimensional and therefore, may not be entirely revealing. (Doc. 150 at 104-105).

Beyond the testimony of Dr. Lambert, the only actual evidence that the government tried to introduce related to the age of the minors was through Detective Buck. However, by her own admission, they were looking for the minors and for the facilitators in order to "find out what age they are." (Doc. 149 at 240). Detective Buck further admitted that because they did not have evidence of the victim's ages, they were actually missing important evidence in the case. (Doc. 149 at 241). Detective Buck then discussed the fact that she had no other direct knowledge as to the age of the individuals reflected in the photographs except for what was said in conversations. The government did not have birth certificates, driver's licenses, social security cards, or any other identifying information that could help determine an exact age of the individuals. (Doc. 149 at 242).

Without any direct evidence, the government's entire case was based on circumstantial evidence. However, that circumstantial evidence did not lead to reasonable inferences, but instead, forced the jury to determine its verdict on speculation. This has consistently been held as improper.  In a circumstantial evidence case, the government's case need not exclude every possible hypothesis of innocence to support a conviction beyond a reasonable doubt, but a conviction cannot be based on speculation and surmise alone. *United States v. Kim*, 435 F.3d 182 (2d Cir. 2006). Where the government's case is based on circumstantial evidence, "reasonable inferences, and not mere speculation, must support the

jury's verdict". *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002) [*quoting, United States v. Perez-Tosta*, 36 F.3d 1552, 1557 (11th Cir. 1994)].

Not only did the government's witnesses offer insufficient proof of the female's ages, but the Appellant offered a reasonable hypothesis that the government's witnesses could not prove how old the females in the videos and pictures were. Specifically, Dr. Rosenbloom testified that he "found no evidence that one could say with any degree of medical certainty that the individuals in those photographs and videos were under 18 years of age." (Doc. 150 at 181). Dr. Rosenbloom testified about the Tanner Scaling Stage, which was used by Dr. Lambert in forming his opinions, and how the creator of said stage discredited it because law enforcement was misusing it. Dr. Rosenbloom testified that an individual cannot look at a photograph, with nothing more, and determine someone's age. Dr. Rosenbloom's testimony was supported by the literature introduced through Dr. Lambert involving the case study. Specifically, when individuals who presented themselves as experts in the field were shown 10 photographs of females and asked to determine if they were under the age of eighteen, two-thirds of the participants incorrectly identified them as being under eighteen when in fact, all females were legal adults. If nothing more, Dr. Rosenbloom testified that the study revealed how difficult and unreliable an age assessment can be from a photograph.

Without any other direct evidence or additional evidence to corroborate the opinion of Dr. Lambert, the government's burden of proof regarding the age of the alleged minors was insufficient to sustain a conviction against the Appellant. The record reveals that the jury's verdict was clearly based on nothing more than speculation and surmise, which is prohibited.

Not only did the government fail to meet its burden on the above argued counts, but it further failed to meet its burdens on Count Six and Eleven, which charged the Appellant with travelling in foreign commerce for the purpose of engaging in illicit sexual conduct (and attempted for Count Eleven), which again required the government to prove that the Appellant traveled for the purpose of engaging in a sexual act with a person who was under 16 years of age and was at least four years younger than the Appellant. (Doc. 100 at 15). The jury was instructed that the Appellant's defense was that he reasonably believed that the person was 18 years or older at the time of the acts charged in the Indictment. (Doc. 100 at 16).

Pursuant to Title 18, United States Code, Section 2423(b), a conviction requires "proof beyond a reasonable doubt that the defendant (1) traveled to another state; (2) for the purpose of engaging in any illicit sexual conduct; (3) with just a person under 18 years old." *United States v. Hooks*, 353 Fed. Appx. 320 (11th Cir. 2009). A conviction under Section 2423(b) turns simply on the illegal

purpose for which a defendant traveled. *See, United States v. Root*, 296 F.3d 1222, 1231 (11th Cir. 2002).

There were two separate incidents where the government asserted the Appellant traveled, or attempted to travel, to the Philippines. The first one was in December of 2006 and the second was in December of 2016. The government did not present any evidence that the Appellant had the required intent when traveling, or attempting to travel, to the Philippines. Instead, the government presented evidence that the Appellant was having conversations with individuals, who did not testify at trial, about fantasies. As instructed by the district court, the Appellant presented sufficient evidence to raise the issue of whether the Appellant was traveling with the intent to meet up with adult prostitutes. For example, when the Appellant was arrested on December 30, 2016 and taken from the plane, law enforcement seized his bag. Within that bag, there was nothing that linked him to attempting to travel with the intent to meet a minor. As testified to by the government's witnesses, his bag contained articles of clothing, potential sex toys, and various technical devices. To conclude that those items provide a reasonable inference to conclude that he was traveling to meet a minor, or had the intent to do so, would be erroneous. Therefore, without anything more, the judgment of acquittal as to the two counts involving travelling should have been granted.

The government bears the burden of proving beyond a reasonable doubt all the elements of the crime charged. *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310 (1995). No element may be removed from the jury's consideration. *United States v. Goetz*, 746 F.2d 705 (11th Cir. 1984). Furthermore, the law requires that a criminal act be performed voluntarily and intentionally and not because of mistake or accident. *United States v. Woodruff*, 296 F.3d 1041 (11th Cir. 2002). Therefore, because the government failed to prove all counts beyond a reasonable doubt, this Court should find that the district court erred by denying the Appellant's motion for judgment of acquittal. The Appellant is entitled to have his judgment and sentence vacated accordingly.

## CONCLUSION

Based on the arguments, facts, and case law presented above, the Appellant's judgment and sentence should be vacated or in the alternative, the Appellant is entitled to a new trial.

Respectfully Submitted,

By: /s/ Mark J. O'Brien
    Mark J. O'Brien, Esquire
    Florida Bar No.: 0160210

By: /s/ Rachael E. Reese
    Rachael E. Reese, Esquire
    Florida Bar No.: 0111396
    O'Brien Hatfield, PA
    511 West Bay Street
    Suite 330
    Tampa, Florida 33606
    Direct: (813) 228-6989

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B).

This brief contains 11,321, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

/s/ Mark J. O'Brien
Mark J. O'Brien, Esquire
Florida Bar No.: 0160210

/s/ Rachael E. Reese
Rachael E. Reese, Esquire
Florida Bar No.: 0111396

48

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the foregoing Initial Brief was filed on the CM/ECF system which will then provide a copy to counsel of record on this the 17th day of October 2018.

/s/ Mark J. O'Brien
Mark J. O'Brien, Esquire
Florida Bar No.: 0160210

/s/ Rachael E. Reese
Rachael E. Reese, Esquire
Florida Bar No.: 0111396