No. 18-10809-CC

In the
# United States Court of Appeals
# for the Eleventh Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DAVID PAUL LYNCH,
*Defendant-Appellant*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 8:17-CR-37-T-33AEP-1

## BRIEF OF THE UNITED STATES

MARIA CHAPA LOPEZ
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

COLIN P. MCDONELL
Assistant United States Attorney
Appellate Division
USA No. 183
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000

December 17, 2018

*United States v. David Paul Lynch*
No. 18-10809-CC

## Certificate of Interested Persons
## and Corporate Disclosure Statement

The Certificate of Interested Persons and Corporate Disclosure Statement in David Paul Lynch's principal brief is complete.

No publicly traded company or corporation has an interest in the outcome of this appeal.

## Statement Regarding Oral Argument

The United States does not request oral argument.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement......... C-1

Statement Regarding Oral Argument ................................................................. i

Table of Contents .......................................................................................... ii

Table of Citations ......................................................................................... iv

Statement of Jurisdiction ........................................................................... viii

Statement of the Issues ................................................................................. 1

Statement of the Case ................................................................................... 1

    *Course of Proceedings* ............................................................................. 1

    *Statement of the Facts* ............................................................................ 2

        A.    Offense Conduct ...................................................................... 2

                *(1)    Liza – Lynch's June 2005 Trip* ..................................... 4

                *(2)    Erica – Lynch's December 2006 Trip* ............................ 7

                *(3)    Rica – Lynch's August 2007 Trip* .................................. 9

                *(4)    Denise – Lynch's August 2016 Trip and Attempted December-2016-to-January-2017 Trip* ......................... 10

        B.    Expert Testimony ................................................................... 12

        C.    Jury Instructions, Motions, and Objections Relevant to the Attempt Charges and Lynch's Belief about the Victims' Ages ..................................................................... 16

    *Standard of Review* ................................................................................. 18

Summary of the Argument .......................................................... 19

Argument and Citations of Authority ........................................ 21

    I.    There is sufficient evidence supporting Lynch's convictions ....... 21

        A.    Sufficient evidence supports the counts for production
            and attempted production of child pornography
            (Counts One through Five and Seven through Nine) ........ 21

            *(1)*    *The evidence showed that his victims were actually
                minors and thus supported these convictions on an
                actual-production theory* ............................................ 22

            *(2)*    *The evidence showed that Lynch believed his victims
                were minors and thus supported these convictions on
                an attempted-production theory* ................................... 25

        B.    Sufficient evidence supports the counts for receipt
            (Count Ten) and possession (Count Twelve) of child
            pornography .................................................................... 32

        C.    Sufficient evidence supports the counts for traveling in
            foreign commerce to engage in illicit sexual conduct
            (Count Six) and attempting to do so (Count Eleven)......... 33

    II.    The district court did not abuse its discretion by declining to
        give a limiting instruction ......................................................... 35

Conclusion................................................................................ 40

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

# Table of Citations

## Cases

*Lamonica v. Safe Hurricane Shutters, Inc.*,
    711 F.3d 1299 (11th Cir. 2013) ................................................................. 19

*Marzec v. Toulson*,
    283 F. App'x 740 (11th Cir. 2008) ............................................................ 39

*Musacchio v. United States*,
    136 S. Ct. 709 (2016) ................................................................................ 31

*United States v. Adams*,
    83 F.3d 1371 (11th Cir. 1996) ................................................................... 29

*\*United States v. Anderton*,
    136 F.3d 747 (11th Cir. 1998) ................................................................... 24

*United States v. Brazel*,
    102 F.3d 1120 (11th Cir. 1997) ................................................................. 39

*\*United States v. Cooper*,
    433 F. App'x 875 (11th Cir. 2011) ................................................. 22, 23, 26

*United States v. Deverso*,
    518 F.3d 1250 (11th Cir. 2008) ................................................................. 24

*\*United States v. Gray*,
    260 F.3d 1267 (11th Cir. 2001) ................................................................. 29

*United States v. Hernandez*,
    906 F.3d 1367 (11th Cir. 2018) ............................................................ 19, 27

*United States v. Hilton*,
    167 F.3d 61 (1st Cir. 1999) ....................................................................... 25

*United States v. Isnadin*,
    742 F.3d 1278 (11th Cir. 2014) ................................................................. 30

iv

*United States v. Jernigan*,
   341 F.3d 1273 (11th Cir. 2003) ........................................................19, 28

*United States v. Joshi*,
   896 F.2d 1303 (11th Cir. 1990) ............................................................ 37

*United States v. Keen*,
   676 F.3d 981 (11th Cir. 2012) .............................................................. 19

*United States v. Love*,
   449 F.3d 1154 (11th Cir. 2006) ............................................................ 28

*United States v. Menendez*,
   315 F. App'x 103 (11th Cir. 2008) ....................................................... 38

*United States v. O'Malley*,
   854 F.2d 1085 (8th Cir. 1988).........................................................23, 24

*United States v. Parry*,
   649 F.2d 292 (5th Cir. Unit B June 1981) ........................................... 36

*United States v. Peaden*,
   727 F.2d 1493 (11th Cir. 1984) ............................................................ 36

*United States v. Pierson*,
   544 F.3d 933 (8th Cir. 2008) ................................................................ 22

*United States v. Porter*,
   184 F. App'x 112 (2d Cir. 2006) .......................................................... 23

*United States v. Resendiz-Ponce*,
   549 U.S. 102 (2007) ............................................................................. 29

*United States v. Richardson*,
   304 F.3d 1061 (11th Cir. 2002) ............................................................ 23

*United States v. Rivera*,
   780 F.3d 1084 (11th Cir. 2015) ........................................................36, 37

*United States v. Root*,
  296 F.3d 1222 (11th Cir. 2002) .................................................................. 33

*United States v. Rothenberg*,
  610 F.3d 621 (11th Cir. 2010) .................................................................... 22

*United States v. Ruggiero*,
  791 F.3d 1281 (11th Cir. 2015) .................................................................. 21

*\*United States v. Smith*,
  459 F.3d 1276 (11th Cir. 2006) ............................................................23, 26

*United States v. Votrobek*,
  847 F.3d 1335 (11th Cir. 2017) .................................................................. 36

*United States v. Yost*,
  479 F.3d 815 (11th Cir. 2007) .................................................................... 22

**Statutes**

18 U.S.C. § 2251(a) ......................................................................... 1, 21

18 U.S.C. § 2251(e) .....................................................................1, 21, 29

18 U.S.C. § 2252(a)(2) .......................................................................... 1

18 U.S.C. § 2252(a)(4)(B) ..................................................................... 2

18 U.S.C. § 2252(b)(1) .......................................................................... 1

18 U.S.C. § 2252(b)(2) .......................................................................... 2

18 U.S.C. § 2422(b) ............................................................................. 22

18 U.S.C. § 2423 ................................................................................. 33

18 U.S.C. § 2423(b) .......................................................................1, 2, 33

18 U.S.C. § 2423(e) ............................................................................... 2

18 U.S.C. § 2423(f)(2) .................................................................. 33

18 U.S.C. § 3231 ...................................................................... viii

28 U.S.C. § 1291 ...................................................................... viii

**Rules**

Fed. R. App. P. 4(b) .................................................................. viii

Fed. R. Evid. 801(c) .................................................................. 36

Fed. R. Evid. 801(d)(2)(B) ....................................................37, 38

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida in a criminal case. That court had jurisdiction under 18 U.S.C. § 3231. The court entered judgment against Lynch on March 1, 2018, Doc. 125, and Lynch filed a notice of appeal the same day, Doc. 127, making it timely under Federal Rule of Appellate Procedure 4(b). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## Statement of the Issues

I.    Whether sufficient evidence supports Lynch's convictions.

II.   Whether the district court abused its discretion by denying Lynch's request for a limiting instruction.

## Statement of the Case

Lynch, who frequently traveled to the Philippines for sex tourism, was indicted for producing child pornography and related crimes. The jury convicted him on all counts, notwithstanding his defense that the alleged victims were all adults. On appeal, Lynch challenges the sufficiency of the evidence proving that the victims were adults. He also argues that the district court erred by denying his request for a limiting instruction concerning certain evidence, such as his online chats about having sex with children, in which he and others discussed the ages of the victims.

### *Course of Proceedings*

Lynch was indicted on eight counts of production and attempted production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Counts One through Five and Seven through Nine); one count of traveling in foreign commerce to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) (Count Six); one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (Count Ten); one count of attempting to

1

travel in foreign commerce to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) and (e) (Count Eleven); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count Twelve). Doc. 58.

At trial, Lynch moved for judgment of acquittal, which the district court denied. Doc. 150 at 145–47, 222–23. At the end of the four-day trial, the jury found Lynch guilty on all counts. Doc. 101. The court sentenced him to 330 years in prison. *See* Doc. 125 at 3.

## Statement of the Facts

### A.    Offense Conduct

After receiving a tip that, based on his online activity, Lynch may have been exploiting children, investigators searched his email accounts.[1] *See* Doc. 149 at 78–85. His email accounts contained over fifty pornographic photographs of a girl who was "[o]bviously" in puberty. Doc. 150 at 30; *see* Doc. 149 at 85–88, 101–03. His emails also indicated that Lynch had traveled to the Philippines to have sex with children and planned to do so again. *See* Doc. 149 at 87–89. Moreover, in numerous online chats, Lynch had made

---

[1]Lynch's email accounts and online identities included wheaton_knight89@yahoo.com, ppacifica@yahoo.com, wheaton_knight89, wheaton_knight79, Randolph Raven, and blue_idea_man43. Doc. 148 at 59–60.

plans to have sex with minors, discussed past sexual experiences with minors, otherwise expressed his interest in having sex with minors, or had sexually explicit conversations with people who said they were minors.[2] *See, e.g.*, Gov't Ex. 35 ("did u get your period jen jen? … i hope you choose me for take your virgin jen jen"); Gov't Ex. 37 ("did your boobsget bigger? … ur still a child … did u get more hairy? … i miss licking u … i miss your pussy"); Gov't Ex. 40 ("but sometimes i have desires for young girlsi know its bad … its just so pretty at the age when they get thier first menstruation … i always want to see them naked"); Gov't Ex. 41 ("are u 13 years old? its ok if u are … i dream to have a young gf likeu … even if ur 14 its ok to me"); Gov't Ex. 43 ("i like a girl 14 to 16 yo"); Gov't Ex. 44 ("my dream girl is 13 to 14 [hairy] and virgin … virgin pussy are so clean to lick … maybe Nica will sell her virginity to me?"); Gov't Ex. 45 ("I hope I can make 1 girl cum … sometimes young girls can't relax … First we will meet the girls in the mall … Treat them to video games and cinema").

In late December 2016, the FBI arrested Lynch at the airport as he was attempting to board a plane to the Philippines. Doc. 149 at 21–23, 47, 214–15. During a subsequent search of his residence, investigators found numerous

---

[2]Except where noted, this brief excerpts text from online chats and emails without editing and without adding [*sic*].

electronic devices in his bedroom, including hard drives, memory cards, camcorders, camcorder tapes, compact discs, and laptops. Doc. 148 at 33–34, 39–49. (Lynch's bedroom was locked, and only he had access to it. *Id.* at 39, 62.) Lynch's devices contained pornographic images of numerous girls and videos of him engaging in sexual acts with girls. Doc. 149 at 131–48. Four appearing frequently in Lynch's collection were Liza, Erica, Rica, and Denise. Doc. 149 at 148–49.[3]

### (1)    Liza – Lynch's June 2005 Trip

Lynch had traveled to the Philippines for about a week in June 2005. Doc. 148 at 60. During that week, Lynch engaged in sexual acts with a girl he called Liza, which he captured with a still camera and video cameras. Doc. 149 at 142, 160, 166, 176–77. Investigators later found hundreds of pornographic images of Liza on the devices in Lynch's home. Doc. 149 at 176–77. Two videos, filmed from different angles, showed Lynch engaged in various sex acts with Liza, taking pictures of her genitals, and ejaculating on her face. Doc. 149 at 142, 164, 166–69; Gov't Exs. 501A, 602A (excerpts of videos underlying Counts One and Two). Liza can be heard sobbing and

---

[3]In addition to the pornographic images and videos, the United States introduced non-pornographic images of each of these four victims. *See, e.g.* Gov't Ex. 11A (Denise); Gov't Ex. 118 (Liza); Gov't Ex. 314 (Rica); Gov't Ex. 608C (Erica).

saying, "No," "stop," "Ma, please," "it's so hard," and "[it] hurt[s]." Gov't Ex. 501C; *see* Doc. 149 at 137–38. Lynch's devices also contained still images of Liza, focusing on her genitals. Doc. 149 at 170–71; *see, e.g.*, Gov't Exs. 130–32 (images underlying Counts Three through Five).

In an electronic spreadsheet, Lynch described Liza as "young" and "15." Doc. 149 at 173; Doc. 223A. (Lynch maintained electronic spreadsheets with names of girls, pornographic pictures of them, and descriptions of them. Doc. 149 at 173–75. Additional spreadsheets contained expense information associated with girls on his trips. *Id.* at 175–76; *see, e.g.* Doc. 225A.) Other girls in that spreadsheet were similarly associated with a number in the teens. Doc. 149 at 173–74; Doc. 223A.

After Lynch's June 2005 trip, in a February 2006 online chat with someone who said she was a girl in the Philippines, Lynch told the girl that he had met Liza in the Philippines. *See* Doc. 149 at 155–60; Gov't Ex. 23 at 1146–47. Lynch said of Liza: "she is only 16 he he." Gov't Ex. 23 at 1146. That chat occurred in February 2006—over seven months after Lynch met with Liza. Doc. 149 at 160. In the same chat, Lynch repeatedly asked the age of the person he was chatting with and expressed his preference for young girls, writing, for example:

"i like a young girl"

5

"are you 14?"

"i like younger"

"i was hoping you are 14"

"tell me your real age"

"14?"

"do you have hair in your puki yet?"

Gov't Ex. 23 at 1145–46. ("Puki" is a term for female genitalia used in the Philippines. Doc. 149 at 54, 63–64.) After the girl told Lynch that she was 16, Lynch asked her to take off her shirt so that he could masturbate. Gov't Ex. 23 at 1146.

In another online chat in November 2006, Lynch described himself as "liza's ex bf," elaborating that she broke up with him because "she got mad" after he "took pics of [their] sex and … showed her friend." Gov't Ex. 24 at 1139–40, 1144. Lynch said that he knew that Liza was a virgin "because [he] licked her pussy." *Id.* at 1141. He said he "didn't take her cherry" because "Liza was too young." *Id.* Rather, he "pressed [his] hard cock to her pussy … but she said it hurt so [he] stopped." *Id.* Instead, "she always satisfied [him] by blowjob." *Id.* Lynch also noted that he was going to return to the Philippines in December. *Id.* at 1144.

6

**(2)    Erica – Lynch's December 2006 Trip**

Lynch traveled to the Philippines for about a week in December 2006. Doc. 148 at 60–61. In the month leading up to his trip, he corresponded online with someone he called "Fhey," who prostituted girls. *See* Doc. 149 at 178–79, 185, 192. In one such chat in November, Lynch asked her to "find 4 girls" for his upcoming trip in December. Gov't Ex. 25 at 1260. Fhey asked him, "u want 13 year's old girl." *Id.* at 1261. Lynch replied, "yes." *Id.* Lynch later asked, "what is her age and name?" *Id.* Fhey replied, "the 13 year''s old she is name erica," to which Lynch replied, "nice … is she virgin." *Id.* Lynch commented on pictures of Erica and others, told Fhey to "tell them not to shave or trim," asked Fhey to bring a vibrator, and said that he would bring birth control. *Id.* at 1262–63. Lynch also asked if she had any naked pictures of Erica. *Id.* at 1261–62.

Later in the chat session, a man named "Thomas," who was in the Philippines with Fhey, began chatting with Lynch from Fhey's account. *Id.* at 1263. Thomas told Lynch that he always stayed in a particular part of a particular hotel, which had a way into the room that was "not strait throu the hotel." *Id.* at 1264. Thomas also advised that Lynch should "tipp the guard every day … and they are very understanding." *Id.* Lynch replied that he would "remember that," noting that "it can be dangerous." *Id.*

In a separate chat session with Thomas a few weeks later, in early December, Lynch asked about the ages of certain girls. *See* Gov't Ex. 26 at 1281. Thomas told him that Erica was 12 or 13. *Id.* Lynch replied, "thats young." *Id.* Lynch then asked if Thomas had any nude pictures of Erica, asked if Erica was "good in bed," and predicted that he would "love her." *Id.* at 1281–82.

Investigators later found, on Lynch's devices, photographs and a video made in December 2006 and featuring Erica. *See* Doc. 148 at 51; Doc. 149 at 122, 145, 178–82, 195, 204–09, 211. The video shows Lynch engaging in sex acts with four people, including Erica. Doc. 149 at 145, 195, 204–09; *see* Gov't Ex. 608A (excerpts of video underlying Count Seven). At one point, one of the other people in the video mentions in English that Erica was 13. Doc. 149 at 205. The video also shows Lynch passing out candy and using another camera to take photographs of Erica's genitals. *Id.* at 206–07. Lynch also stored those photographs of Erica's genitals on his devices. *Id.* at 207–08; *see, e.g.*, Gov't Ex. 216 (image underlying Count Eight).

In a chat with Fhey about 18 months after this trip, in May 2008, Lynch asked about Erica: "how old is she now?" Gov't Ex. 32 at 1220. Fhey replied that Erica was 17. *Id.* When Lynch asked about the age of another girl, and Fhey replied that she was 18, Lynch replied, "legal." *Id.* at 1219. Lynch talked

about bringing his brother on another trip, and he noted, "with my bro we can only have girls 18+ … hes strict." *Id.* at 1219–20.

### (3)    *Rica – Lynch's August 2007 Trip*

Shortly after Lynch's December 2006 trip, he chatted again with Thomas. *See* Gov't Ex. 28. Thomas mentioned a girl named "Rica" who was "13." *Id.* at 1298. At another point in the conversation, Thomas asked if Lynch liked to "roleplay and ageplay to[o]." *Id.* at 1300. Lynch replied, "no need to role play when the ages are real … he he." *Id.* Lynch also asked Thomas, "what the youngest u fucked," to which Thomas replied 10 and 12. *Id.* at 1301. Lynch, answering the same question, said, "16 i think." *Id.* Lynch mentioned that he was "worried about getting caught." *Id.* at 1299.

Lynch traveled to the Philippines in August 2007. Doc. 148 at 61. Investigators later found, on Lynch's devices, images of Rica's genitals taken in August 2007. Doc. 149 at 210–11; *see, e.g.* Gov't Ex. 218 (image underlying Count Nine).

Several months after this trip, in a November 2007 chat with Fhey, Lynch commented that he had "really liked" Rica's and Erica's bodies. Gov't Ex. 30 at 1212. Three years after the trip, in a December 2010 chat between Lynch and Thomas, Thomas commented that Rica and another girl "must be close to 18 now." Gov't Ex. 39 at 1295. Lynch replied, "yes … rica maybe."

*Id.*

**(4)    Denise – Lynch's August 2016 Trip and Attempted December-2016-to-January-2017 Trip**

Beginning in 2015, Lynch began exchanging emails with Rose, a woman in the Philippines. Doc. 149 at 102–04. During 2015 and 2016, Rose repeatedly emailed Lynch pornographic pictures of her daughter, Denise. *Id.* at 103–113. In all, Lynch received over fifty pornographic images of Denise via email. *Id.* at 103; *see, e.g.* Gov't Ex. 10A. In a calendar, Lynch had blocked off August 26 to 30 for Rose and Denise. Doc. 149 at 227; Gov't Ex. 229A. And according to Customs and Border Patrol records, Lynch traveled to the Philippines in late August 2016. Doc. 149 at 227.

In the weeks leading up to that August trip, Lynch exchanged text messages with Rose. *Id.* at 149. (The contact was saved in his phone as "Denise," but it appears to actually be Rose—her profile picture features an adult woman, and she and Lynch talk about Denise in the third person. *Id.*) Lynch repeatedly asked her to send him pictures of her and Denise, elaborating, "i want to see if her nipples getting bigger and more hair in her private part." Gov't Ex. 702 at 1477; *see also, e.g.*, *id.* at 1474, 1488, 1506. When the trip was only days away, they texted about how Lynch would soon arrive to meet with her and Denise. *See id.* at 1489, 1491, 1529. On August 25, Lynch

10

wrote, "We meet tomorrow" so that "Denise don't miss school today." *Id.* at 1530. Lynch also wrote, "I have a dream we all 3 make love heheh," and Rose responded, "Yes I agree." *Id.* at 1532.

Several days later, Lynch asked Rose whether she wanted the same hotel as last time. *Id.* at 1541. The next day, he wrote, "i miss seeing Denise naked … she don't like I know." *Id.* at 1545. Rose responded, "I take photos tomorrow in the morning … when she take shower." *Id.* at 1546. Lynch then said, "always I fantasize licking her vagina and asshole," and then asked, "but shes not ready right?" *Id.* at 1546–48. Rose responded, "yes maybe when she already 15." *Id.* at 1549. When Lynch asked how old Denise was then, Rose responded, "this December she is 13 yrs old." *Id.* To which Lynch replied "ah ok," and then he again asked for pornographic pictures of Denise. *Id.* at 1549–51.

After the August trip, Lynch told Rose that he planned to come back in late December or January. *See* Gov't Ex. 702 at 1670. Lynch told Rose about the sexual acts he wanted to do with both her and Denise on this next trip. *See, e.g.*, *id.* at 1680 ("Denise agree? … what if i lick hers once a day?"); *id.* at 1682 ("omg if both ur hands are touching my snake and balls im in heaven"); *id.* at 1683 ("can u both be naked?"). Rose agreed that she and Denise would do those things. *See, e.g.*, *id.* at 1711. Moreover, up until his arrest in December,

11

Lynch continued requesting and receiving pornographic photographs of Denise. Doc. 149 at 231–35.

On December 29, 2016, Lynch went to the airport to travel to the Philippines. Doc. 148 at 61. The FBI arrested him at the airport as he was attempting to board his flight. Doc. 149 at 21–23, 47, 214–15. His baggage contained sex toys, several dozen generic-Viagra pills, a large amount of candy, cameras, iPhones, and devices used to store digital photographs. *See id.* at 34–37, 44; Doc. 150 at 32.

## B.    Expert Testimony

Several expert witnesses testified about the ages of Liza, Erica, Rica, and Denise. Walter Lambert, a pediatrician and pediatrics professor, testified for the United States. *See* Doc. 150 at 8–10. During his decades of pediatric practice, Dr. Lambert had examined thousands of children, including many Filipino patients. *Id.* at 10–11, 15. Dr. Lambert was also the medical director of a child-protection team that worked with victims of child abuse, and as part of that work he had examined images or videos to determine the age of the victims on about one hundred occasions. *Id.* at 17–18.

Dr. Lambert discussed specific physical characteristics associated with different age ranges and the ways those characteristics change over the course of puberty. *Id.* at 14. According to Dr. Lambert, over 99 percent of women

12

have finished with puberty by the age of 18. *Id.* at 13. He testified that he placed people he views in images into four categories: (1) under the age of 12, having no signs of puberty; (2) under the age of 18, having started but not completed puberty; (3) unable to determine because of the image quality; (4) having adult features, which doesn't mean that the person is 18 or older, but would make Dr. Lambert uncomfortable offering an opinion that they are under 18. *Id.* at 14, 18. He testified that, although he cannot determine an exact age from an image or video, sometimes he can provide a medical opinion as to whether a person is a minor from an image or video. *Id.* at 18–19.

Dr. Lambert had been provided with images and videos from the investigation and asked to provide his opinion as to the age range of the people depicted. *Id.* at 21–22. With some of them, he either could not determine the age range or placed them in the adult range. *Id.* at 22. Liza, Erica, Rica, and Denise, however, he was able to place in the under-18 range. *Id.* at 23–31. Liza was "in puberty, but early-ish in puberty." *Id.* at 24. Erica was "nowhere close to being to the end of puberty." *Id.* at 27–29, 30–31. Rica was still in puberty. *Id.* at 29–30. And Denise was "[e]arly in puberty." *Id.* at 30 (further noting that she was "clearly" and "[o]bviously" in puberty). Dr. Lambert observed that, with some of the images, "it didn't take a doctor to know that was a child." *Id.* at 122.

13

Arlan Rosenbloom, a retired professor of pediatric endocrinology, testified for the defense. Doc. 150 at 151, 156. He discussed an article that he'd read by a forensic anthropologist in Italy about the age assessment in pornography. *Id.* at 166. Dr. Rosenbloom said that the anthropologist used eleven images of women, taken from "legitimate" pornography websites and "certified" to be over the age of 18, and presented them to lay people, pediatricians, and others. *Id.* at 166. That anthropologist, Dr. Rosenbloom said, found that lay people believed that 50 percent of the images depicted minors and that the pediatricians believed that up to 95 percent of the images depicted minors. *Id.*

Dr. Rosenbloom said that he acquired those images from the Italian anthropologist and used them in his own study. *Id.* at 169, 173. At a meeting with sixteen other pediatric endocrinologists and fellows in Tampa, Dr. Rosenbloom showed them the images and asked them to write down whether the women were under 18 or over 18. *Id.* at 178. Sixty-five percent of the responses he received indicated a belief that the person in the pornographic image was under the age of 18. *Id.* at 180. Dr. Rosenbloom believed, based on his survey of the sixteen doctors and fellows at that meeting, that even professionals could not reliably determine whether images of female subjects depicted a minor or an adult. *Id.* at 180.

14

On cross-examination, Dr. Rosenbloom conceded that he did not personally make any effort to confirm that the images used in his study actually depicted adults. *Id.* at 185. Rather, he trusted the Italian anthropologist, who Dr. Rosenbloom said had obtained the images from "legitimate" pornographic websites. *Id.* at 185–86. The only "verification data" that Dr. Rosenbloom had received from the anthropologist was a list of those websites and contact information for each website, but Dr. Rosenbloom had not contacted any of them. *See* Doc. 150 at 187–88; Gov't Ex. 960. The web addresses of those sites included phrases such as "teensexmovs," "tryteens," "nubiles," and "nudebody-teen." Gov't Ex. 960.

As to the photographs and videos at issue in this case, Dr. Rosenbloom testified on direct examination that he had reviewed them, and that one could not say with medical certainty that the people depicted were under the age of 18. Doc. 150 at 165, 181; *see also id.* at 182. On cross-examination, he clarified that his position was that he could not say either way whether the people depicted were adults or children. *Id.* at 182. When shown a picture of Denise on the witness stand, however, Dr. Rosenbloom admitted that she looked like a child. *See id.* at 202–03; *see also* Doc. 149 at 106 (testimony that Gov't Ex. 10A depicts Denise). Moreover, Dr. Rosenbloom agreed that at least 99 percent of women finish puberty by the age of 18. Doc. 150 at 183.

15

**C.    Jury Instructions, Motions, and Objections Relevant to the Attempt Charges and Lynch's Belief about the Victims' Ages**

For each of the child-pornography-production counts, the indictment alleged that Lynch "did use and persuade and *attempt to use and persuade a minor*…to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct." Doc. 58 at 1–6 (emphasis added).

In its trial memorandum, the United States said that it intended to introduce evidence relating to Lynch's belief that his victims were children. Doc. 88 at 3. The United States noted that, because mistake of age is not a defense to production of child pornography, evidence relating to the defendant's perception of the victim's age is ordinarily not relevant in production cases. Doc. 88 at 2. But because a defendant can be guilty of *attempted* production even if the victims are not actually children, so long as the defendant intended to produce child pornography, this evidence was relevant "given the charges in this case." *Id.* at 2–3.

During trial, defense counsel requested a limiting instruction, concerning the online chats and the videos, that statements of anyone other than Lynch "cannot be used as substantive evidence of age" given that they are hearsay. Doc. 149 at 196–99. Defense counsel never objected to the admission of those statements and did not dispute that they were admissible for other purposes,

16

such as to "add context to what Mr. Lynch was saying." *Id.* at 197; *see also* Doc. 150 at 213–14. The district court denied the request, holding that an out-of-court statement admitted to show its effect on the hearer is not hearsay, and that these statements went to Lynch's belief about the girls' ages. Doc. 150 at 214–16.

In its closing argument, the United States emphasized that the eight production counts all charged Lynch with both producing *and* attempting to produce the images and videos. Doc. 151 at 20–21. The United States argued that, in this context, Lynch would be guilty of attempt if he "intended to create child pornography, meaning that if he believed that [the victims] were under 18, he is guilty of attempting to produce child pornography, whether or not there is any evidence of them actually being 18 years of age." *Id.* at 21; *see also id.* at 22. The United States also argued that the victims were actually children. *See, e.g.*, *id.* at 35.

In Lynch's closing argument, he argued that he had traveled to the Philippines "to have sex with prostitutes." *Id.* at 52. He argued that the United States hadn't proved that any of people depicted were actually minors or that Lynch ever "intended on being with anyone who was actually under the age of 18." *Id.* at 65–66.

The court instructed the jury that it can be a crime to attempt to commit

17

an offense, even if the attempt fails, when the defendant (a) knowingly intended to commit the crime and (b) took a substantial step toward committing it. *Id.* at 90–91. The instructions noted that Counts One through Five and Seven through Nine charged Lynch with attempting to produce child pornography. *Id.*

During deliberations, the jurors sent a question to the court: "If the defendant believed Liza, Erica, Rica, and Denise were under the age of 18 (whether or not they were) is that sufficient to satisfy the condition they be a minor?" Doc. 103-4; *see* Doc. 151 at 102.The United States proposed the response: "Yes as to Counts One, Two, Three, Four, Five, Seven, Eight, Nine, and Eleven" (the child-pornography-production counts and the attempted travel-for-illicit-sexual-conduct count) and "No" as to the remaining counts. Doc. 151 at 103. Lynch agreed that the court should give that answer, *id.* at 103, and the court gave it, Doc. 103-4.

The jury convicted Lynch on all counts. Doc. 101. Its completed verdict form finds Lynch guilty, for Counts One through Five and Seven through Nine, of "the offense of producing and *attempting* to produce child pornography." Doc. 101 (emphasis added).

### Standards of Review

I.     This Court reviews de novo the denial of a motion for judgment of

acquittal, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Keen*, 676 F.3d 981, 989 (11th Cir. 2012).[4]

II.   This Court reviews for abuse of discretion a district court's refusal to give a requested jury instruction. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013).

## Summary of the Argument

I.   Sufficient evidence supports Lynch's convictions, including the particular factual point that Lynch challenges: that his victims were minors. A jury could reasonably determine that his victims were minors based on expert testimony, images of the victims, and Lynch's own statements about the age of his victims. Moreover, for all but the child-pornography receipt and possession counts, the jury could alternatively convict him based on the ample evidence

---

[4]As part of both his judgment-of-acquittal claim and his jury-instruction claim, Lynch argues that the jury could not convict him based on his belief about age. As discussed in detail later in this brief, that particular argument is unreviewable under the invited-error doctrine. *See United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir. 2003). And even if it were reviewable, because he never raised it below, this Court would review it only for plain error. *See United States v. Hernandez*, 906 F.3d 1367, 1370 (11th Cir. 2018). On plain-error review, Lynch would have to show that (1) the district court erred; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error "seriously affected the fairness integrity, or public reputation of judicial proceedings." *Id.*

that he believed that his victims were minors. Lynch's argument that the jury was precluded from convicting him based on his belief is not reviewable (under the invited-error doctrine), meritless, and harmless (given the evidence that the victims were actually minors).

II.     The district court did not abuse its discretion in denying Lynch's proposed limiting instruction, which would have instructed the jury that all statements about the victims' ages (other than Lynch's own statements) were hearsay that the jury could not consider as evidence of the victims' ages. Because Lynch adopted those statements, they were admissible not only as evidence of his belief about age, but also as substantive evidence of age. Moreover, even if some statement or other had not been adopted by Lynch, and thus some narrower limiting instruction would have been appropriate, any error in not giving an instruction was harmless given the considerable evidence of the victims' ages other than these statements.

## Argument and Citations of Authority

### I.    There is sufficient evidence supporting Lynch's convictions.

**A.    Sufficient evidence supports the counts for production and attempted production of child pornography (Counts One through Five and Seven through Nine).**

Lynch was indicted for producing or attempting to produce child pornography depicting Liza (Counts One through Five), Erica (Counts Seven and Eight), and Rica (Count Nine). Doc. 58. To convict a defendant for production of child pornography, the United States must prove (1) that a minor (a real person less than 18 years old) was depicted, and (2) that the defendant used or persuaded the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct. 18 U.S.C. § 2251(a).[5] The defendant's knowledge of age is not an element of the offense. *United States v. Ruggiero*, 791 F.3d 1281, 1285 (11th Cir. 2015).

But it is also a crime to attempt to violate this statute. 18 U.S.C. § 2251(e). In general, to convict for an attempt offense, the United States must prove (1) that the defendant intended to commit the underlying criminal offense and (2) that the defendant's intent is strongly corroborated by his

---

[5]The offense also requires evidence of a connection to foreign or interstate commerce, *see* 18 U.S.C. § 2251(a), but Lynch does not contest that element on appeal, *see* Lynch's brief at 25 n.1.

taking a substantial step toward committing the crime. *United States v. Rothenberg*, 610 F.3d 621, 626 (11th Cir. 2010). So to convict a defendant for attempting to produce child pornography, rather than proving that the person depicted was actually a minor, the United States must prove that the defendant believed that the person was a minor (and thus intended to produce child pornography). *United States v. Pierson*, 544 F.3d 933, 938–39 (8th Cir. 2008); *cf. United States v. Yost*, 479 F.3d 815, 820 (11th Cir. 2007) (similarly holding in the context of attempted enticement of a minor under 18 U.S.C. § 2422(b)).

Lynch does not dispute that he produced the images and videos depicting Liza, Erica, and Rica; he contests only the sufficiency of the evidence showing that the victims were actually minors. Lynch's brief at 40–41; *see also id.* at 25 n.1. But there is more than enough evidence supporting his convictions under both an actual-production theory (because his victims were actually minors) and an attempted-production theory (because he believed they were minors).

### *(1)    The evidence showed that his victims were actually minors and thus supported these convictions on an actual-production theory.*

As for evidence that Liza, Rica, and Erica were actually minors, the United States introduced, to start, the photographs and videos depicting them, from which the jury could infer their age. *See United States v. Cooper*, 433 F.

22

App'x 875, 878 (11th Cir. 2011) ("[T]he jury was shown the images, and left free to conclude, based on its own judgment, that those images depicted actual children below the age of 18."); *United States v. Porter*, 184 F. App'x 112, 114 (2d Cir. 2006) (holding that there was sufficient evidence that pictures depicted minors, as "[j]urors were entitled to make that determination according to their own perceptions"); *United States v. O'Malley*, 854 F.2d 1085, 1088 n.3 (8th Cir. 1988) (holding that factfinder was entitled to consider characteristics of girls depicted in photographs, such as that one "appeared diminutive in all bodily proportions"); *cf. United States v. Smith*, 459 F.3d 1276, 1287 (11th Cir. 2006) (holding that jury could reasonably infer, in part from the images themselves, that the people depicted were so obviously minors that defendant must have known as much); *United States v. Richardson*, 304 F.3d 1061, 1064 (11th Cir. 2002) (determining that children depicted in images were real, rather than virtual, based on examination of the images). The jury viewed not only the pornographic images and videos underlying specific charges, *see, e.g.*, Gov't Exs. 10A, 130–32, 216, 218, 501A, 602A, 608A, but also additional non-pornographic images of each of the victims, *see, e.g.*, Gov't Ex. 118 (Liza); Gov't Ex. 314 (Rica); Gov't Ex. 608C (Erica). As Dr. Lambert remarked, with at least some of the images, "it didn't take a doctor to know that was a child." Doc. 150 at 122.

23

Moreover, the jury heard expert testimony about the ages of Liza, Rica, and Erica. Dr. Lambert testified about the characteristics associated with puberty and which of those characteristics he identified in these girls, and he opined that they were in puberty—some of them early in puberty—and under the age of 18. Doc. 150 at 14–31. This sort of expert testimony is sufficient to sustain a finding that pornography depicts a minor. *See, e.g.*, *United States v. Anderton*, 136 F.3d 747, 750 (11th Cir. 1998) (concluding that doctor's testimony about age of people depicted in video was sufficient to support conviction). Although Lynch's expert, Dr. Rosenbloom, testified that one could not conclude with "medical certainty" that these girls were minors, Doc. 150 at 181–82, "[t]he jury was free to evaluate both experts' testimony and conclude that the government's expert was more reliable and credible," *Anderton*, 136 F.3d at 750. And even Dr. Rosenbloom agreed that at least 99 percent of women finish puberty by the age of 18. Doc. 150 at 183.

Finally, Lynch's own statements that Liza, Rica, and Erica were minors support a jury finding that they were minors. *See United States v. O'Malley*, 854 F.2d 1085, 1088 n.3 (8th Cir. 1988) (holding that the factfinder could consider defendant's "own descriptions that each girl in each picture was young" in determining that the girls were minors); *see also United States v. Deverso*, 518 F.3d 1250, 1258 (11th Cir. 2008) (upholding child-pornography-possession

convictions based in part on defendant's admission to another inmate that "he had had sex with underage girls while he was in the Philippines"); *United States v. Hilton*, 167 F.3d 61, 75 (1st Cir. 1999) (holding that evidence admissible to prove age of person depicted includes "how the disk, file, or video was labeled or marked by … the defendant"). For example, Lynch described Liza as "15" and "young" in one of his spreadsheets, Doc. 149 at 173, and about eight months after creating pornography depicting Liza, Lynch said of her, "she is only 16 he he," Gov't Ex. 23 at 1146. Similarly, three years after creating pornography featuring Rica, Lynch agreed with his friend Thomas that she "must be close to 18 now." Gov't Ex. 39 at 1295.

In sum, there was more than enough evidence for the jury to reasonably find that Liza, Erica, and Rica were minors.

### (2)    *The evidence showed that Lynch believed his victims were minors and thus supported these convictions on an attempted-production theory.*

Even absent evidence of the victims' actual ages, there was abundant evidence supporting a finding that Lynch believed them to be minors, which supports his convictions on an attempt theory. To start, the same evidence supporting a jury finding that the victims were minors—such as the images themselves, expert testimony about their age, and Lynch's descriptions of the victims and their ages—also supports a finding that Lynch must have believed

25

as much. *See United States v. Smith*, 459 F.3d 1276, 1287 (11th Cir. 2006) (holding that, given the photographs of the victim and testimony of investigators that she appeared to be very young, the jury could reasonably find that "the victim was so obviously a minor that the defendant must have known as much"). Moreover, in numerous chats, Lynch said that he preferred minors and specifically sought out sexual encounters with minors. *See, e.g.*, Gov't Ex. 25 at 1250–61 (asking for 13-year-old girls for his December 2006 trip); Gov't Ex. 23 at 1145–46 ("i like a young girl … i was hoping you are 14"). That sort of circumstantial evidence shows that Lynch intended that the subjects of his pornography be minors. *Cf. United States v. Cooper*, 433 F. App'x 875, 878 (11th Cir. 2011) (holding that circumstantial evidence such as defendant's searching for images using the phrase "naked young boys" was sufficient to show that he knew images were child pornography). Further, Lynch often asked about and was told the age of the minors he sought to victimize, belying his claim that he believed they were adults. *See, e.g.*, Gov't Ex. 25 at 1261 (Fhey telling Lynch that Erica is 13); Gov't Ex. 28 at 1298 (Thomas telling Lynch that Rica is 13). On appeal, Lynch does not even appear to challenge the sufficiency of the evidence showing that he believed that the victims were minors. *See* Lynch's brief at 40–41.

Instead, although Lynch acknowledges that belief about age (rather than

age itself) is the governing element of attempted production, he contends, for the first time on appeal, that the United States did not "adequately charge" him with attempted production or "adequately instruct the jury" on attempt. Lynch's brief at 40–41; *see id.* at 28–36. Lynch now makes this argument even though (1) the indictment specifically charged him with "attempt" to produce child pornography, Doc. 58 at 1–6; (2) the United States argued in a pretrial memorandum that Lynch's belief about age was relevant because he was charged with attempted production, Doc. 88 at 2–3; (3) the United States made the same point in closing arguments, Doc. 151 at 20–22; (4) the court instructed the jury that the child-pornography-production counts charged Lynch with "attempting to produce child pornography" and gave the jury the Eleventh Circuit pattern instructions on attempt, *see id.* at 90–91; and (5) the verdict form described these counts as "the offense of producing and attempting to produce child pornography," *id.* at 95–97; Doc. 101. Lynch did not object to or otherwise challenge any of this. Therefore, this Court ordinarily would review his unpreserved arguments for plain error. *United States v. Hernandez*, 906 F.3d 1367, 1370 (11th Cir. 2018).

But Lynch not only failed to object to the alleged error of allowing the jury to convict based on his belief that the victims were minors, he invited the alleged error. During deliberations, the jury asked whether Lynch's belief that

27

the victims were minors was sufficient to satisfy the element that they be

minors. Doc. 151 at 102; Doc. 103-4. The district court asked Lynch whether

an answer of "Yes" for the child-pornography production counts was

acceptable, and Lynch's counsel responded, "Agreed." Doc. 151 at 103. By

affirmatively agreeing that the district court should instruct the jury that it

could convict on the basis of his belief as to their age, Lynch invited any error

in allowing the jury to do so. *Cf. United States v. Jernigan*, 341 F.3d 1273, 1290

(11th Cir. 2003) (holding that "by affirmatively agreeing to the playing of the

tapes," the defendant invited any error that resulted from the jury's hearing

them). And "[i]t is a cardinal rule of appellate review that a party may not

challenge as error a ruling or other trial proceeding invited by that party."

*United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006). Accordingly, this

Court should not consider Lynch's argument that the jury cannot convict on

the basis of his belief about the victims' ages.

Even if Lynch's arguments were reviewable, they have no merit, on

plain-error review or otherwise. Lynch first contends that the indictment did

not adequately charge attempt offenses because it did not specifically allege

that he believed that the victims were minors. Lynch's brief at 28–32, 40. But

that was not required. An indictment sufficiently alleges an offense if it

(1) "contains the elements of the offense charged and fairly informs a

defendant of the charge against which he must defend," and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007). In *Resendiz-Ponce*, the Supreme Court held that the indictment's use of the word "attempt," along with the specification of the time and place of the attempted offense, satisfied these requirements. *Id.* (rejecting argument that indictment was insufficient for failing to allege a particular overt act). Further, this Court has rejected the argument that an indictment was insufficient for not expressly alleging the mens rea of an offense, holding that it was enough that the indictment identified the offense statute and "contained enough factual detail to apprise [the defendant] of the conduct for which he would be tried." *United States v. Gray*, 260 F.3d 1267, 1282–83 (11th Cir. 2001).

Here, for each of the production counts, the indictment specifically alleges that Lynch did "attempt" to use and persuade a minor for the purpose of creating pornography, refers to the statute for attempted production (18 U.S.C. § 2251(e)), and identifies the date, location, victim, and image associated with Lynch's conduct. Doc. 58 at 1–6. Nothing more was required. There was no error, let alone plain error. *See United States v. Adams*, 83 F.3d 1371, 1375 (11th Cir. 1996) (when assessing an unpreserved challenge to an indictment, this Court must find it sufficient unless it is "so defective that it

29

does not, by any reasonable construction, charge an offense for which the defendant is convicted").

Lynch's argument that the district court failed to "adequately instruct the jury" on attempt fares no better. *See* Lynch's brief at 40–41. The district court, using the Eleventh Circuit pattern jury instructions on attempt, instructed the jury that an attempt to commit a crime is an offense when the defendant (a) knowingly intended to commit the crime, and (b) took a substantial step toward committing it. Doc. 151 at 90–91. Lynch doesn't contend that these instructions were incorrect; nor did he ask the district court to instruct the jury any differently. But he now argues that the district court should have specifically instructed "that the government only needed to prove that the Appellant believed … that the child named in the indictment was under the age of eighteen." Lynch's brief at 34. The court's instructions, though, when read together with the instructions on child-pornography production, meant just that: that the United States needed to prove that the defendant "intended" to use a minor (rather than actually used a minor) to create pornography. Even if Lynch had requested his preferred phrasing of the instructions, this Court would have reviewed "questions of phrasing" a jury instruction for abuse of discretion, *United States v. Isnadin*, 742 F.3d 1278, 1296 (11th Cir. 2014), and Lynch cites no authority for the notion that the district court's jury instructions

30

were an abuse of discretion, let alone plainly erroneous. In any event, even if there had been an instructional error, if would have had no bearing on whether the evidence was sufficient to establish the elements of the charged offense. "A reviewing court's limited determination on sufficiency review … does not rest on how the jury was instructed." *Musacchio v. United States*, 136 S. Ct. 709, 715 (2016).

Nor does Lynch show any prejudice. The district court, in response to a question from the jury, instructed the jury that it could convict Lynch on the productions counts if he believed that the victims were minors, even if they were not actually minors. *See* Doc. 103-4. That response covers precisely what Lynch believes the original instructions were missing.

Therefore, even if reviewable, Lynch's arguments concerning the indictment and the jury instructions do not identify errors, let alone plain errors, precluding the jury from convicting him on an attempt theory.[6] And

---

[6]Lynch also asserts that his belief as to the victim's age is irrelevant because his judgment identifies these convictions as production, rather than attempted production, of child pornography. Lynch's brief at 41. Lynch does not develop this argument at all, let alone explain how the district court's choice of words describing the offense of conviction in a judgment could retroactively affect the theory by which the jury was permitted to convict him. The jury was instructed on attempt and its completed verdict form finds Lynch guilty, for Counts One through Five and Seven through Nine, of "the offense of producing and *attempting* to produce child pornography." Doc. 101 (emphasis added).

even if Lynch were right and the jury couldn't convict on an attempt theory, it wouldn't matter because there was also sufficient evidence for the jury to convict based on an actual-production theory.

**B.    Sufficient evidence supports the counts for receipt (Count Ten) and possession (Count Twelve) of child pornography.**

Count Ten alleges that Lynch received pornography between November and December 2016 (the time period when he received pornographic images of Denise), and Count Twelve alleges that Lynch possessed child pornography on December 30, 2016 (the date of the search of his residence). Doc. 58. As with the production counts, Lynch only challenges the sufficiency of the evidence that the victims were minors. Lynch's brief at 41–42.

For the receipt conviction, the evidence shows that Lynch received pornographic images of Denise. See Doc. 149 at 103–13. And the evidence supports a finding that Denise was a minor. As with the other victims, the jury was entitled to make that determination based on expert testimony that she was a minor, Doc. 150 at 30, the images of her, *see*, *e.g.*, Gov't Ex. 11A, and Lynch's statements evincing his knowledge that she was a child, *see, e.g.*, Gov't Ex. 702 at 1477 ("i want to see if her nipples getting bigger and more hair in her private part"). Even Lynch's expert conceded that Denise looked like a child. *See* Doc. 150 at 202–03; *see also* Gov't Ex. 10A.

As for the possession conviction, Lynch possessed pornographic images of Liza, Erica, Rica, and Denise. Doc. 149 at 131–49. As previously discussed, there was sufficient evidence for the jury to find that all of them were minors.

## C. Sufficient evidence supports the counts for traveling in foreign commerce to engage in illicit sexual conduct (Count Six) and attempting to do so (Count Eleven).

Count Six charged Lynch with having traveled in foreign commerce for the purpose of engaging in illicit sexual conduct with another person in December 2006 (the trip in which he met with Erica), and Count Eleven charged him with having attempted to do so in December 2016 (when he intended to meet with Denise). Doc. 58 at 4–5, 7–8. These offenses require proof that the purpose of the defendant's travel was to engage in "illicit sexual conduct," which includes, among other things, a commercial sex act with a minor. *See* 18 U.S.C. § 2423(b), (f)(2).[7] The victim need not actually be a minor, as a conviction under section 2243(b) "turns simply on the illegal purpose for which [the defendant] traveled." *United States v. Root*, 296 F.3d 1222, 1231 (11th Cir. 2002). Similar to his challenges to his other convictions,

_____

[7]The term "illicit sexual conduct" has additional, alternative definitions, but which of these additional definitions apply varies between Count Six and Count Eleven because 18 U.S.C. § 2423 was amended effective May 2015. Because Lynch challenges only the sufficiency of the evidence showing that he intended to meet with a minor, *see* Lynch's brief at 46, these distinctions don't affect the resolution of this appeal.

Lynch only contests the sufficiency of the evidence that his intent was to meet with minors—he argues that the evidence supported his defense that he was instead "traveling with the intent to meet up with adult prostitutes." Lynch's brief at 46.

Lynch's alternative theory notwithstanding, the evidence amply supports the jury's findings that, for both the December 2006 trip and the attempted December 2016 trip, the purpose of Lynch's trip was illicit sexual conduct with a minor. For Count Six, the evidence shows that Lynch traveled to meet with Erica, who Lynch believed was a minor. Before that trip, he chatted online with a facilitator of child sex tourism, asked her to find him four girls for his trip, said he wanted a 13-year-old, was told that Erica was 13, and commented on pictures of Erica. *See* Doc. 149 at 178–79, 185, 192; Gov't Ex. 25 at 1260–63. And then he traveled to the Philippines, met Erica, engaged in sexual acts with her while photographing and recording her. Doc. 148 at 60–61; Doc. 149 at 145, 195, 204–09.

For Count Eleven, the evidence shows that Lynch attempted to travel to meet with Denise, who Lynch believed was a minor. In conversations with Denise's mother in the months leading up to that trip, Lynch and Denise's mother agreed to which sex acts Lynch and Denise would engage in when he visited. *See, e.g.*, Gov't Ex. 702 at 1670, 1680–83, 1711. Lynch had already

34

visited Denise a few months earlier, *see* Doc. 149 at 227, and had received

numerous pictures of Denise, *see id.* at 103; *see, e.g.*, Gov't Ex. 10A. Denise's

mother told Lynch that Denise would be turning 13 the month in which Lynch

intended to visit, Gov't Ex. 702 at 1549, and Lynch's comments (such as those

about Denise's chest and genitals) made clear that he knew that Denise was

still developing, *see, e.g.*, *id.* at 1477. Moreover, when Lynch was arrested at the

airport, his bag contained not only sex toys, pills, and cameras, but also a large

amount of candy. Doc. 149 at 34–37, 44; Doc. 150 at 32.

In sum, there was sufficient evidence for the jury to convict Lynch on all

counts. Although Lynch suggests that his chats concerned mere "fantasies"

about having sex with children, Lynch's brief at 46, the evidence shows

otherwise. As Lynch himself put it, there was "no need to role play when the

ages [were] real." Gov't Ex. 28 at 1300.

## II.  The district court did not abuse its discretion by declining to give a limiting instruction.

The district court did not abuse its discretion when it declined to instruct

the jury that all out-of-court statements, other than those made by Lynch, were

hearsay and could not be considered as substantive evidence of a victim's age.

*See* Doc. 149 at 197; Doc. 150 at 214–15. In refusing to give a requested jury

instruction, a district court abuses its discretion only when the requested

instruction "(1) was a correct statement of the law; (2) was not adequately covered in the instructions given to the jury; (3) concerned an issue so substantive that its omission impaired the accused's ability to present a defense; and (4) dealt with an issue properly before the jury." *United States v. Votrobek*, 847 F.3d 1335, 1344 (11th Cir. 2017). Lynch's requested instruction was not a correct statement of law because (a) the statements even other than Lynch's about age were not hearsay and (b) the jury could consider them as substantive evidence of age.

The statements were not hearsay because, to start, they were admissible as evidence of Lynch's knowledge of the victim's age. In general, hearsay is a statement, other than one offered by the declarant while testifying at the trial or hearing, offered to "prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A statement is not hearsay when it is "not offered for its truth, but merely to show that it was said." *United States v. Peaden*, 727 F.2d 1493, 1499 (11th Cir. 1984). For example, admitting an out-of-court statement as "circumstantial evidence of the declarant's knowledge of the existence of some fact, rather than as testimonial evidence of the truth of the matter asserted, does not offend the hearsay rule." *United States v. Parry*, 649 F.2d 292, 295 (5th Cir. Unit B June 1981). Similarly, an out-of-court statement is not hearsay when offered "to show its effect on the hearer." *United States v. Rivera*,

36

780 F.3d 1084, 1092 (11th Cir. 2015).[8] Therefore, for example, when someone would tell Lynch in an online chat that a particular victim was a teenager, that statement was not hearsay and was admissible, at a minimum, to show that Lynch had reason to know the age of the victim. In district court, even Lynch agreed that these statements were admissible to "add context" to his own statements. Doc. 149 at 197.

Furthermore—and this is why these statements were not only admissible as evidence of Lynch's belief, but also admissible as substantive evidence of age—these statements were admissible as adoptive admissions. An out-of-court statement is not hearsay when it is offered against an opposing party and is one that the party "adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). A statement can be an adoptive admission even when the opposing party silently acquiesces to it, so long as the statement is "such that an innocent defendant would normally be induced to respond" and the evidence allows the jury to infer that the defendant "heard, understood, and acquiesced in the statement." *United States v. Joshi*, 896 F.2d 1303, 1312 (11th Cir. 1990).

Here, when someone would tell Lynch the age of a victim, he generally adopted that statement about the victim's age. Or, at a minimum, the context made clear that Lynch acquiesced in that statement, even though an innocent

---

[8]The district court explicitly relied on *Rivera*. *See* Doc. 150 at 214–15.

37

person would challenge the notion that the targets of his sexual exploits were so young. For example, when a facilitator of child sex tourism responded to Lynch's inquiry about Erica's age by telling Lynch that she was 13, Lynch responded, "nice … is she virgin." Gov't Ex. 25 at 1261. Or when Thomas commented that Rica—years after Lynch's sessions with her—"must be close to 18 now," Lynch replied, "yes … rica maybe." Gov't Ex. 39 at 1295. When Denise's mother told Lynch that Denise would turn 13 that December, Lynch replied, "ah ok," and then asked for pornographic pictures of Denise. Gov't Ex. 702 at 1549–51. Thus, these statements were admissible as substantive evidence of age as Lynch's adopted admissions, and no limiting instruction was required. *See United States v. Menendez*, 315 F. App'x 103, 107 (11th Cir. 2008) (holding that, although out-of-court statements were admissible to place defendant's own statements in context, no limiting instruction was required because they were also admissible as adoptive admissions) (citing Fed. R. Evid. 801(d)(2)(B)).

Lynch did not identify for the district court (and still does not identify on appeal) any particular statement about age that he believes warranted a limiting instruction. Rather, he asked the district court for an instruction that all statements (other than his) about age were inadmissible as substantive evidence of age. Doc. 149 at 197. Thus, even to the extent that the chat or

38

video transcripts contain some statement about age that Lynch did not

explicitly or implicitly adopt, the broad instruction that Lynch proposed—that

*all* statements other than his were inadmissible as substantive evidence of

age—was inaccurate. Lynch cites no authority for the proposition that the

district court was obliged to sift through the evidence and, on its own initiative,

give a narrower limiting instruction than what Lynch had proposed.

Moreover, even if Lynch was entitled to some sort of limiting

instruction, he was not prejudiced by the absence of one. The denial of a

limiting instruction is subject to harmless-error analysis. *See United States v.*

*Brazel*, 102 F.3d 1120, 1152 (11th Cir. 1997) (holding that denial of limiting

instruction was not reversible error given the "substantial" evidence presented);

*Marzec v. Toulson*, 283 F. App'x 740, 743 (11th Cir. 2008) (concluding that

denial of limiting instruction when evidence subject to instruction was

cumulative of other evidence). As discussed in this brief's sufficiency-of-the-

evidence section, the jury had ample evidence of the victims' age and of

Lynch's belief in their age, including his descriptions of the victims, expert

testimony, images of the victims, and Lynch's voluminous correspondence in

which he sought out minors to have sex with and to feature in his homemade

pornography.

Finally, Lynch again advances his arguments about the sufficiency of the

indictment and the jury instructions concerning attempt. *See* Lynch's brief at 28–36. For the same reasons that these arguments don't help him with his sufficiency-of-the-evidence claim, they don't help him with this claim, either.

The district court did not abuse its discretion in declining to give Lynch's inaccurate limiting instruction; nor was the absence of even an accurate limiting instruction harmful given the considerable evidence supporting Lynch's convictions.

## Conclusion

The United States requests that this Court affirm the judgment of the district court.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

DAVID P. RHODES
Assistant United States Attorney
Chief, Appellate Division

By:    *s/ Colin P. McDonell*
COLIN P. MCDONELL
Assistant United States Attorney
Appellate Division
USA No. 183
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000
colin.mcdonell@usdoj.gov

40

## Certificate of Compliance with Type-Volume Limitation

This brief, which contains 9493 countable words under 11th Cir. R. 32-4, complies with Fed. R. App. P. 32(a)(7)(B).

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing was sent by CM/ECF on December 17, 2018, to:

MARK J. O'BRIEN, ESQ.

RACHAEL E. REESE, ESQ.

*Counsel for David Paul Lynch*

<u>*s/ Colin P. McDonell*</u>
COLIN P. MCDONELL
Assistant United States Attorney

gkpr/no/12/11/18

p_Lynch, David_US Response Brief cpm FINAL.docx