IN THE
UNITED STATES COURT OF APPEALS
FOR THE
ELEVENTH CIRCUIT
ATLANTA, GEORGIA

---

APPEAL NO: 18-10809-B

---

UNITED STATES OF AMERICA
Plaintiff/Appellee

Versus

DAVID PAUL LYNCH
Defendant/Appellant

---

APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA

8:17-cr-00037-VMC-AEP-1

---

PETITION FOR REHEARING AND
REHEARING *EN BANC*
OF APPELLANT DAVID PAUL LYNCH

---

MARK J. O'BRIEN, ESQUIRE
RACHAEL E. REESE, ESQUIRE
O'Brien Hatfield, P.A.
511 West Bay Street, Suite 330
Tampa, Florida 33606
(813) 228-6989
Florida Bar No. 0160210
Florida Bar No. 0111396
COUNSEL FOR APPELLANT

APPEAL NO: 18-10809-B

*United States of America v. David Paul Lynch*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26-1, I hereby certify that the persons listed below are interested in the outcome of this case:

1. Bentley, A. Lee, III, former United States Attorney;

2. Covington, Hon. Virginia M. Hernandez, United States District Judge;

3. Elm, Donna Lee, Federal Public Defender;

4. Gerard, Eric, Assistant United States Attorney;

5. Goldsmith, Stanley A., Esq.;

6. Hatfield, Victoria E., Esq.;

7. Hughes, Irina, Federal Public Defender's Office;

8. Lopez, Maria Chapa, United States Attorney;

9. Lynch, David Paul, defendant-appellant;

10. McDonell, Colin P., Assistant United States Attorney;

11. Minor victims whose identities are protected;

12. Muench, James A., Assistant United States Attorney;

13. Muldrow, W. Stephen, former Acting United States Attorney;

14. Nebesky, Suzanne C., Assistant United States Attorney;

15. O'Brien, Mark J., Esq.;

I

16. Peresie, Jennifer Lynn, Assistant United States Attorney;

17. Porcelli, Hon. Anthony E., United States Magistrate Judge;

18. Reese, Rachael E., Esq.;

19. Rhodes, David P., Assistant United States Attorney, Chief, Appellate Division;

20. Sweeney, Kathleen M., Federal Public Defender's Office; and

21. Walczak, Bozena, movant;

22. Walczak, Marian, movant; and

23. Wilson, Hon. Thomas G., United States Magistrate Judge.

## STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision of the precedent of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions:

*United States v. Fortenberry*, 971 F.2d 717 (11th Cir. 1992)

/s/ Mark J. O'Brien
Mark J. O'Brien

/s/ Rachael E. Reese
Rachael E. Reese

ATTORNEY OF RECORD FOR APPELLANT DAVID P. LYNCH

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS…………........…………….……I

STATEMENT OF COUNSEL……………………...……........…………..III

TABLE OF CONTENTS…………......…………….…..………………...IV

TABLE OF AUTHORITIES…………......…………………….…...………..V

STATEMENT OF THE ISSUES…………......…………………...…..…….1

STATEMENT OF THE COURSE OF PROCEEDINGS AND
DISPOSITION OF THE CASE…………………….………………….…..1

STATEMENT OF THE FACTS NECESSARY TO ARGUMENT
OF THE ISSUES…………………………...….…………………………3

ARGUMENT AND CITATIONS OF AUTHORITY……………………….11

  I.    **The Panel Decision is Contrary to This Court's Precedent in**
        ***United States v. Fortenberry*, 971 F.2d 717 (11th Cir. 1992)**………...11

CONCLUSION……………………………………………….……..…16

CERTIFICATE OF COMPLIANCE……………………………………….16

CERTIFICATE OF SERVICE……………………………..…………….17

ADDENDUM……………………………………………………….…..18

IV

# TABLE OF AUTHORITIES

## Cases

*United States v. Fortenberry*, 971 F.2d 717 (11th Cir. 1992)………………..*passim*

*United States v. Lee*, 603 F.3d at 904 (11th Cir. 2010)……………………..……..4

*United States v. Pierson*, 544 F.3d 933 (8th Cir. 2008)………..……….....……..4

*United States v. Riquene,* 522 Fed. Appx. 940 (11th Cir. 2014)……………...…..4

## Statutes

Title 18, United States Code, Section 2423………………………………………...2

Title 18, United States Code, Section 2252………………………………………...2

## Rules

Federal Rule of Appellate Procedure 32…………………………………………..16

## STATEMENT OF THE ISSUES MERITING REHEARING OR *EN BANC* CONSIDERATION

1. Is the panel's decision, which found that any error that resulted from the district court's denial of Lynch's request for a limiting instruction harmless, contrary to the Court's precedent of *United States v. Fortenberry*, 971 F.2d 717 (11th Cir. 1992), because the panel's decision failed to only consider whether the admissible evidence supports the verdict and instead, considered evidence infected by error?

## STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

On September 6, 2017, a federal grand jury returned a twelve-count, Third Superseding Indictment against Lynch. Counts One through Five, and Seven through Nine, charged Lynch with production of child pornography – specifically, for taking sexually graphic photos and videos of Liza, Erica, and Rica. Each count alleged that Lynch "did use and persuade and attempt to use and persuade a minor" to engage in sexually explicit conduct for the purpose of producing child pornography. However, these counts did not include any reference to the additional mens rea, or knowingly, requirement for "attempted" production. (Doc. 58).

Count Six charged Lynch with traveling in foreign commerce with intent to engage in illicit sexual conduct with a minor—specifically, for the December 2006 trip where he was caught on video engaging in sex acts with Erica—in

1

violation of 18 U.S.C. § 2423(b). Count Ten charged Lynch with knowing receipt of child pornography—specifically, for receiving photos of Denise over email—in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). Count Eleven charged Lynch with "**knowingly** attempt[ing]" to travel in foreign commerce with intent to engage in illicit sexual conduct with a minor—specifically, for the December 2016 trip where the FBI caught him on his way to meet Denise—in violation of 18 U.S.C. § 2423(b) and (e). (Doc. 58 at 7) (emphasis added). Count Twelve charged Lynch with knowing possession of child pornography—a catch-all charge covering thousands of child pornography videos and photographs found in the FBI raid of his home—in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). (Doc. 58).

On October 10, 2017, Lynch proceeded to trial. After several days of evidence, the jury ultimately found him guilty on October 13, 2017. (Doc. 101). On February 22, 2018, Lynch proceeded to his sentencing hearing before the Honorable Judge Virginia M. Hernandez Covington. Lynch was sentenced to three thousand, nine hundred sixty (3,960) months imprisonment, to be followed by fifteen (15) years supervised release. The prison term specifically consisted of terms of 360 months on each of Counts One through Nine, and Eleven; 240 months on Count Ten, and 120 months on Count Twelve. The district court ordered for

Counts Two through Twelve to run consecutively to each other and to Count One. (Doc. 123).

Following the judgment of the district court, Lynch timely filed his Notice of Appeal with the Court. (Doc. 127). On October 17, 2018, Lynch filed his Initial Brief with the Court and presented two arguments: (1) that the district court abused its discretion when it refused to give a limiting instruction to the jury regarding the government's introduction of hearsay statements from unavailable declarants which resulted in harmless error; and (2) that the district court erred in denying Lynch's motion for judgment of acquittal when the evidence presented was insufficient to sustain a conviction. The government then filed its brief on December 17, 2018, and Lynch filed his Reply Brief on January 14, 2019. Lynch did not request oral argument, and the Court did not find it necessary.

On August 14, 2019, the Court issued its opinion, affirming the district court's judgment via non-published opinion.

## STATEMENT OF THE FACTS NECESSARY TO ARGUMENT OF THE ISSUES

Prior to trial, the government submitted a trial brief to the district court, wherein it laid out what it believed they would show at trial. Pursuant to that brief, it was clear, that the government knew attempted production was legally different than actual production of child pornography. In its brief, the government expressed:

"ordinarily in a production case 'evidence relating to [the defendant's] perception of the victim's age [is] irrelevant.' *United States v. Riquene,* 522 Fed. Appx. 940, 944 (11th Cir. 2014).

Attempted production is different, however, because the crime involves the defendant's *intent* to use and persuade a child to produce child pornography and his taking of a substantial step to do that. A defendant can be guilty of attempted production even if the persons in the visual depictions are not actually real children. *See United States v. Lee,* 603 F.3d at 904, 913 (11th Cir. 2010) (holding that the defendant could be convicted under Section 2251 for "attempting to use a fictitious minor to produce child pornography"); *see also United States v. Pierson,* 544 F.3d 933, 938 (8th Cir. 2008) (affirming a conviction for attempted production of child pornography based on evidence that the defendant "believed that the undercover profile was a minor"). Accordingly, given the charges in this case, evidence related to the defendant's perception of the victim's ages is relevant."

(Doc. 88 at 2).

On October 10, 2017, Lynch proceeded to trial. (Doc. 90). Over the course of several days, the government presented testimony and evidence in the form of texts and chat messages. One of the government's witnesses, Sarasota Police Department Detective Megan Buck, testified about her involvement in Lynch's case as the lead investigator. Throughout her testimony, Agent Buck specifically identified and testified about email exchanges, Yahoo! chat conversations, Skype chat messages, and text message conversations. For example, Government's Exhibit 42 was introduced and published for the jury's consideration during trial, and Agent Buck read various portions of the chat transcripts to the jury. (Doc. 149 at 97).

Q. Could you describe the exchange in this callout box, please. Let me simply ask, in response to the defendant's question "What year high school are you?" what did the defendant say? Excuse me. What did Joy say?

A. "First year."

Q. And the defendant's response?

A. "Nice to hear."

Q. And how did it continue thereafter?

A. Wheaton_knight89 states, "Are you 13 years old? It's okay if you are." And Joy says, "Yes, I am." And wheaton_knight89 says, "Nice age."

Q. What does the defendant say here?

A. "Are you old enough to have a BF?" which is boyfriend.

Q. At the bottom?

A. Wheaton_knight89, "Did you get your first menstruation yet?" She says, "Of course." Wheaton_knight89 says, "When?" And Joy says, "December 2010."

(Doc. 149 at 97). The testimony continued:

Q. The defendant then says he's in the United States. What does he ask after that?

A. "Do you have bro or sis?" And Joy responds, "Only sis."

Q. How does the defendant continue?

A. "How old is she?" Joy responds, "She is 11 years of age." And he says, "Nice. I'd like to meet her and cam, too, so she can know me."

Q. That word cam there, what do you understand that to mean?

A. Camera, where they can see each other when they are talking.

Q. Are you familiar with the term webcam?

A. Yes.

Q. What is that?

A. The webcam -- lots of times people use Skype, and they can see each other as they are speaking.

Q. Looking on the following page at the callout box, how does this exchange go?

A. Can I just read it?

Q. Go ahead.

A. Joy says, "Dear, answer me please if you can support me or help my tuition fees." He says, "Slow down." Wheaton_knight, "We have to e-t to know each other." Oh, to get to know each other.

5

Wheaton_knight says, "I will need to chat you on cam first." Wheaton_knight, "I need to be sure we understand each other. When is your birthday?" Joy responds, "January 28th." He asks, "How old will you be?" Joy says, "14." And he says, "Okay. I can go there and we can meet."

(Doc. 149 at 98-100). Government's Exhibit 23 was also published and read to the

jury. (Doc. 149 at 155-158).

Q. Let's look at Government's Exhibit 23. Who is involvedin this chat?
A. Ppacifica, which is the defendant, and then Jdumapit.
Q. Do you have any idea who Jdumapit is?
A. No.
Q. What does the defendant ask at the top of this callout box?
A. "How old are you?"
Q. Jdumapit appears to respond 18 F. What does the F signify?
A. Female.
Q. How does the defendant respond?
A. "No, you are younger. Please tell me. I like a young girl. Are you 14?" And she says, "No, I'm 18." And he says, "Tell the truth. I like younger. I was hoping you were 14."
Q. What does he say then?
A. "Tell me your real age. 14?" She says, "I'm really 18." And then he asked, "Do you know Liza?"
Q. At the top of the next page, what name do you see here?
A. Jemina.
Q. What relevance does that have to Liza?
A. There is a spreadsheet located on one of the devices that has Liza Jemina with a 15 under it and with a phone number and also her photo, which is the same picture as this young girl.
Q. Now, Jdumapit and the defendant continue talking; and Jdumapit says, "Why did you know her?" What does the defendant say in response?
A. "I met her in real, in Angeles."
Q. What is Angeles?
A. Angeles is a city in the Philippines.
Q. What do they talk about next?

A. The defendant says, "Is she older than you? Liza?" Jdumapit says, "Yes." He says, "She is only 16. He-he." Jdumapit says, "No." He replies, "Yes. See, I met her," and he repeats he met her.

Q. Now, I believe you mentioned earlier that you don't know the true names of these girls; correct?

A. Correct.

Q. And what were you basing your description of these alleged victims on, that is, their names?

A. How he labeled them.

Q. So this conversation then continues up further. What does defendant ask his correspondent here?

A. "Do you have hair in your puki yet?"

Q. And you were present during the translator's testimony?

A. Yes.

Q. What does puki mean?

A. Vagina.

Q. Please continue as to the highlighted portion.

A. He says, "Are you 12 years old?" She says, "16." He says, "Take off your shirt, too, okay, so I can salsal." And she says, "Salsal?" And he responds, "Masturbate."

Later on, during the same chat conversation, Agent Buck testified that "[h]e's asking how old are the girls that she is with and to tell the truth, and she says, "Both 16." He said, "One looks younger." And she said she is -- one of them is already 16." (Doc. 149 at 159). These are only two of **countless** chats that were introduced and published for the jury for consideration.

However, none of individuals who Lynch was purportedly messaging in any of the various vehicles was presented at trial. Agent Buck admitted that she had no other direct knowledge as to the age of the individuals reflected in the photographs **except** for what was said in the various conversations. The government did not have birth certificates, driver's licenses, social security cards, or any other

identifying information that could help determine an exact age of the individuals. (Doc. 149 at 242).

During the testimony of government witness Agent Buck, trial counsel for Lynch requested a limiting instruction that the statements made, either written form or audio, by individuals other than Lynch, could not be used as substantive evidence of age given the fact that they were hearsay statements. (Doc. 149 at 196). The government argued that the statements were not hearsay because the issue was not about whether what they said was true, but rather if the Lynch believed the statements to be true. (Doc. 149 at 197). The government specifically argued that

> "[t]he effect on the here (sic) in this instance is what the defendant believed; and the reason why that is important is because the production count – production of child pornography counts here are charged as attempts. As Miss Peresie rightly pointed out in the trial brief, what the defendant believed is essential; and if the defendant believed that these were underage minors and, thus, tried to produce pornographic images of them, he had attempted to produce child pornography."

(Doc. 149 at 198). The district court acknowledged that it believed the government was correct, but would address the issue at a later point in the trial and give the parties time to discuss a proposed solution. (Doc. 149 at 199).

During the charge conference, trial counsel again brought up the issue of giving the jury a limiting instruction regarding the hearsay statements that were offered to prove the truth of the matter asserted, made out-of-court by declarants

that did not testify at Lynch's trial. Counsel argued that a limiting instruction was appropriate in order to explain to the jury that the hearsay statements were not substantive evidence of age and instead, solely evidence admitted to place Lynch's own statements into context. (Doc. 150 at 214). The district court allowed Lynch and the government to try and come to an agreed upon limiting instruction, but that was to no avail. (Doc. 150 at 215).

> GOVERNMENT: Your Honor, the government's position remains, I think, in accordance with the Court's ruling, that the objection which was overruled was based on the fact that this was not hearsay at all. It was a hearsay objection. The Court, in the government's view, properly ruled that it was for the effect on the hearer, the listener, citing the *Rivera* case to which Your Honor just alluded and, therefore, no instruction is needed.

> DISTRICT COURT: I agree. I'm not going to give a limiting instruction.

(Doc. 150 at 216).

During deliberations, the jury requested clarification on the *mens rea* required for the various charges. The jury submitted a written question: "If the defendant believed Liza, Erica, Rica and Denise were under the age of 18 (whether or not they were) is that sufficient to satisfy the condition that they be a minor?" Lynch and the government agreed on a written response: "Yes as to counts 1, 2, 3, 4, 5, 7, 8, 9 & 11" and "No as to counts 6, 10 & 12."

On appeal, Lynch argued that the district court abused its discretion when it refused to give the jury a limiting instruction on the use of hearsay evidence that

was admitted through the government's case. Lynch specifically argued that the error was reversible because the requested instruction was correct, was not substantially covered by the charge actually given to the jury, and the instruction dealt with some point in the trial so important that failure to give the requested instruction seriously impaired Lynch's ability to conduct his defense. Lynch argued that the error was compounded by the insufficient charging Indictment, that did not specifically identify the mens rea element (knowingly), and the lack of an adequate jury instruction on the required intent for attempted production. In his second argument, Lynch argued that the government failed to present sufficient evidence to convict him.

On August 14, 2019, the panel issued its opinion, affirming the district court's judgment and sentence. The panel first discussed the issue of whether the government produced sufficient evidence to establish that the alleged victims were actual minors under the age of 18. The panel found that the government presented sufficient evidence of such, relying on Lynch's statements, an expert pediatrician, and dozens of photographs and videos.

In deciding the remaining issue, the panel ultimately found that the district court likely erred when it denied Lynch's request for a limiting instruction.

> If a court admits evidence that is admissible for one purpose but inadmissible for another, and the defendant makes a "timely request" for a limiting instruction, the court "must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105.

> Here, the court allowed in statements about the alleged victims' ages that were admissible to prove Lynch's state of mind, but inadmissible to prove that his victims were minors. The government argues that some of the statements at issue may have been admissible under well-established hearsay exceptions; in some cases, for instance, Lynch "manifested that [he] adopted or believed [them] to be true." Fed. R. Evid. 801(d)(2)(B). But hearsay exceptions at best account for some, not all, of the statements about age submitted to the jury.

(Addendum at 11). However, the panel found that any error was harmless.

> As we explained at length in addressing Lynch's first claim, there was sufficient admissible evidence that Lynch's victims were minors—including expert testimony, the admissible chat messages, and the many photos and videos of the victims. We cannot say that hearsay within the chat transcripts had a substantial influence on the outcome of the trial, so the error does not warrant reversal.

(Addendum at 11-12).

## ARGUMENT AND CITATION OF AUTHORITY

### I.    The Panel Decision is Contrary to This Court's Precedent in *United States v. Fortenberry*, 971 F.2d 717 (11th Cir. 1992)

In *United States v. Fortenberry*, 971 F.2d 717 (11th Cir. 1992), the Court entertained a case where the defendant argued the district court improperly allowed evidence of an unrelated murder at his trial for possession of a firearm. On appeal, the Court found that the evidence was properly admitted as inextricably intertwined and not unduly prejudicial. *Id.* at 721. The defendant also argued that admitting the murder evidence was improper because without it, the government still had "ample proof of his possession of the shotgun." *Id.* at 722. The Court then found as follows:

> While we agree that a reasonable jury could have convicted on this evidence alone, we decline to hold that the government must proffer only enough evidence to allow a jury to convict, but no more. Further, even if the evidence should have been excluded, reversal is not mandated. A district court's erroneous admission of evidence does not warrant reversal if the purported error had no substantial influence on the outcome and sufficient evidence uninfected by error supports the verdict. *United States v. Christopher,* 923 F.2d 1545, 1552 (11th Cir.1991); *United States v. Hawkins,* 905 F.2d 1489, 1493 (11th Cir.1990), *cert. denied,* 498 U.S. 1038, 111 S.Ct. 707, 112 L.Ed.2d 696 (1991); *see also United States v. Church,* 955 F.2d 688, 703 (11th Cir.1992). The evidence of Fortenberry's possession of the shotgun was overwhelming. Several witnesses, including Davis and Pike, linked Fortenberry to physical possession of the weapon used to murder Isaac and Williams. This evidence, apart from the murder evidence, amply supported Fortenberry's convictions.

*Id.*

After the panel found that the district court did err by failing to provide the jury with a limiting instruction, the panel further found that any error was harmless. In coming to that decision, the panel cited to the holding and harmless error analysis outlined in *Fortenberry*. However, the panel's ultimate analysis within *Fortenberry* and holding is contrary to *Fortenberry*.

As laid out in *Fortenberry*, the analysis for determining whether an error is harmless requires the Court to look at **two** aspects: first, whether the erroneous admission of evidence had a substantial influence on the outcome; and second, whether there was sufficient evidence uninfected by error that supports the verdict. As it relates to the panel's decision in Lynch's case, the panel clearly considered whether there was sufficient evidence uninfected by error that supports the verdict.

However, that consideration is contrary to its own findings earlier in the opinion, and is contrary to the record. Further, the panel failed to consider the second aspect, of whether the erroneous admission of evidence had a substantial influence on the outcome. These two reasons require a rehearing.

First, the panel reviewed whether the admissible evidence was sufficient to sustain the verdict. In this situation, the panel identified that "admissible" evidence as: "expert testimony, the admissible chat messages, and the many photos and videos of the victims." (Addendum at 11). Meaning, the panel was not to consider the inadmissible chat messages. Although the panel does not identify which messages are inadmissible, some of the hearsay messages that were introduced at trial are identified in the fact section above. If the panel were to exclude the hearsay statements, which include any mention of the alleged victims ages, then the only substance left from the chat messages and emails is Lynch's statements, which only offer what he was arguably thinking or expressing at the time. Which, as argued by Lynch in his briefings, was not something that the jury was to consider because he was not adequately charged with attempted production of child pornography (nor was the jury instructed on attempted production). Therefore, the only actual remaining admissible evidence for consideration would be the expert testimony and the photos and videos of the victims. As outlined in

Lynch's Initial Brief, this remaining evidence is not sufficient to support the verdict.

Not only did the panel err in its analysis of whether the admissible and uninfected evidence would be sufficient to sustain a conviction, the panel further erred by failing to separately consider whether the erroneous admission of evidence had a substantial influence on the outcome. Instead, the panel merely stated that, ""[w]e cannot say that hearsay within the chat transcripts had a substantial influence on the outcome of the trial, so the error does not warrant reversal." (Addendum at 11-12). If the panel had considered whether the evidence had a substantial influence on the outcome, the panel would have conducted a separate analysis that considered the infected evidence that the jury considered at the time of deliberations. Pursuant to *Fortenberry*, this analysis would have resulted in a finding of harmful error.

The panel admitted that the district court likely erred by admitting the hearsay statements, within the various messages and exhibits, without a limiting instruction. This allowed the jury to accept the substance of the hearsay statements for their truth, meaning in other words, that the jury was allowed to believe the government presented substantial evidence that the victims were minors under the age of 18 years old. As identified in the factual section above, the exhibits introduced at trial through the testimony of Agent Buck continuously portrayed

that the individuals Lynch was speaking with, or was interested in, **were under 18 years old**. This evidence was the only direct evidence eluding to how old the minor victors actually were, which was an element that the government was required to prove. Having that evidence to consider, it cannot be said that the jury did not consider it as substantive evidence of the minors' purported ages when it reached its verdict.

The panel's opinion clearly admits that some hearsay statements about age submitted to the jury, should not have been submitted or should have been submitted with a limiting instruction. However, the panel's opinion is not clear as to its harmless error analysis, and as a result, decided a question that is contrary to this Court's opinion in *United States v. Fortenberry*, 971 F.2d 717 (11th Cir. 1992). Not only did the panel consider evidence that was not admissible when determining if the evidence was sufficient to sustain the verdict, but the panel also failed to determine whether the erroneous admission of evidence had a substantial influence on the outcome. Therefore, it is respectfully requested that the Court rehear the issues presented by Lynch.

## CONCLUSION

For the foregoing reasons, the Appellant requests that the panel grant his request for rehearing. Further, the Appellant urges the Court to convene *en banc* to consider the panel opinion's analysis and disregard for Court precedent.

15

Respectfully submitted,

By: /s/ Mark J. O'Brien
    Mark J. O'Brien, Esquire
    Florida Bar No. 0160210

/s/ Rachael E. Reese
Rachael E. Reese, Esquire
Florida Bar No. 0111396

O'Brien Hatfield P.A.
511 West Bay Street, Suite 330
Tampa, Florida 33606
(813) 228-6988

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this motion complies with the type-volume limitation set forth in FRAP 32(a)(7)(B).

This brief is fifteen pages in length, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

By: /s/ Mark J. O'Brien
    Mark J. O'Brien, Esquire
    Florida Bar No. 0160210

/s/ Rachael E. Reese
Rachael E. Reese, Esquire
Florida Bar No. 0111396

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true copy of the foregoing Initial Brief was filed on the CM/ECF system which will then provide a copy to counsel of record on this the 3rd day of September 2019.

By: <u>/s/ Mark J. O'Brien</u>
Mark J. O'Brien, Esquire
Florida Bar No. 0160210

<u>/s/ Rachael E. Reese</u>
Rachael E. Reese, Esquire
Florida Bar No. 0111396

# ADDENDUM

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

―――――――――――

No. 18-10809
Non-Argument Calendar

―――――――――――

D.C. Docket No. 8:17-cr-00037-VMC-AEP-1

DAVID PAUL LYNCH,

Defendant-Appellant,

versus

UNITED STATES OF AMERICA,

Plaintiff-Appellee.

―――――――――――

Appeal from the United States District Court
for the Middle District of Florida

―――――――――――

(August 14, 2019)

Before NEWSOM, GRANT, and FAY, Circuit Judges.

PER CURIAM:

David Lynch appeals his convictions for eight counts of production of child pornography, one count of receipt of child pornography, one count of possession of child pornography, one count of traveling in foreign commerce to engage in illicit sexual conduct with a minor, and one count of attempting to travel in foreign commerce to engage in illicit sexual conduct with a minor. On appeal, Lynch argues that (1) the government did not introduce sufficient evidence to prove that his victims were under 18 years old or that he traveled with the intent to commit illicit sex acts and (2) the district court abused its discretion by denying his request for a jury instruction relating to hearsay statements. After careful review, we affirm.

I.

A.

In June 2005, Lynch traveled to the Philippines and engaged in sexual acts with a girl he called Liza. He filmed their sex acts with video cameras from two different angles, and also took still photos of her genitals. In an electronic spreadsheet that he used to keep track of female contacts in the Philippines, Lynch described Liza as "young" and "15." And one year later, Lynch said in online chats that he was Liza's "ex bf," that he took "naked pics" of her, and that "she is only 16 he he."

2

Lynch returned to the Philippines in December 2006. Prior to the visit, he asked a contact named Fhey to "find 4 girls" for him to engage in sexual acts with. Fhey sent him pictures of the girls, and Lynch expressed particular interest in one girl. Fhey informed him that the girl's name was Erica, and that she was 13 years old. Lynch replied, "nice . . . is she virgin?" On his trip, he made a video of himself engaging in sex acts with four people, including Erica. He also took still photographs of Erica, focusing on her genitals.

When he returned home in late December 2006, Lynch chatted online with "Thomas"—another one of Fhey's clients—to compare notes on their most recent trips to the Philippines. Thomas showed Lynch a picture of a girl named Rica and said, "she is 13." Lynch commented that Rica had "a gorgeous body." Thomas asked Lynch if he liked to "roleplay" or "ageplay" with the girls. Lynch replied, "no need to role play when the ages are real." Half a year later, on yet another trip to the Philippines, Lynch met Rica and took a close-up picture of her genitals.

By 2015, Lynch had developed an online relationship with a Filipino woman named Rose who sent Lynch erotic and pornographic photos of herself and her 11-year-old daughter, Denise, in exchange for a laptop and money. In 2016, he asked Rose, "how old is she now?" And Rose replied, "this December she is 13 yrs old." That December, Lynch made plans to meet up with Rose and Denise "in real" in

3

the Philippines. He and Rose discussed at length what sex acts Denise was "ready" to perform.

Meanwhile, based on a tip sent to the National Center for Missing and Exploited Children, the FBI obtained a search warrant for various email and online messaging accounts that turned out to belong to Lynch. On December 29, 2016, the FBI arrested Lynch as he was boarding a plane to the Philippines. The FBI found sex toys, male performance drugs, cameras, data storage devices, and a large amount of candy in his luggage. When FBI agents searched his home, they found thousands of pornographic videos and photos featuring what appeared to be underage girls.

B.

On September 6, 2017, a federal grand jury returned a twelve-count, third superseding indictment against Lynch. Counts 1-5 and 7-9 charged Lynch with production and attempted production of child pornography—specifically, for taking sexually graphic photos and videos of Liza, Erica, and Rica. Each count alleged that Lynch "did use and persuade and attempt to use and persuade a minor" to engage in sexually explicit conduct for the purpose of producing child pornography. *See* 8 U.S.C. § 2251(a) and (e). In other words, the indictment charged Lynch both with *actual* production, if the jury found that the girls were

4

actually under 18, and—in the alternative—with *attempted* production, if the jury

found that Lynch believed the girls to be minors. Under the statute, the jury could

convict Lynch on either theory, so long as the jurors unanimously agreed which

one.

Count 6 charged Lynch with traveling in foreign commerce with intent to

engage in illicit sexual conduct with a minor—specifically, for the December 2006

trip where he was caught on video engaging in sex acts with Erica—in violation of

18 U.S.C. § 2423(b). Count 10 charged Lynch with knowing receipt of child

pornography—specifically, for receiving photos of Denise over email—in

violation of 18 U.S.C. § 2252(a)(2) and (b)(1). Count 11 charged Lynch with

*attempting* to travel in foreign commerce with intent to engage in illicit sexual

conduct with a minor—specifically, for the December 2016 trip where the FBI

caught him on his way to meet Denise—in violation of 18 U.S.C. § 2423(b) and

(e). Count 12 charged Lynch with knowing possession of child pornography—a

catch-all charge covering thousands of child pornography videos and photographs

found in the FBI raid of his home—in violation of 18 U.S.C. § 2252(a)(4)(B) and

(b)(2).

At trial, the government presented testimony and evidence that included

photos, videos, and Lynch's own texts and online chat messages. Lynch did not

dispute that he produced, starred in, received, and possessed all of the

pornographic photos and videos. He admitted that he had sent and received all of the messages attributed to him. He acknowledged that he had traveled to the Philippines many times to pay for sex. His defense was that the chats were "all a fantasy," that he genuinely believed Erica, Liza, Rica, and Denise were adult women, and that they were in fact adult "prostitutes." The crux of his argument was that adult "women in the Philippines look different than women throughout the rest of the world" and physically resemble underage girls.

In addition, Lynch requested a limiting instruction regarding statements about the victims' ages made by various unavailable declarants—including Thomas, pimps, and the girls themselves—contained in the videos and online chat messages shown to the jury. Lynch did not contest that the statements were admissible to prove what he himself *believed* about the girls' ages. He argued, however, that the statements were inadmissible hearsay if offered to prove the truth of the matter asserted—that is, as substantive evidence of the ages of the victims. After consideration, the district court declined to give a limiting instruction.

During deliberations, the jury requested clarification on the *mens rea* required for the various charges. The jury submitted a written question: "If the defendant believed Liza, Erica, Rica and Denise were under the age of 18 (whether or not they were) is that sufficient to satisfy the condition that they be a minor?" Lynch and the government agreed on a written response: "Yes as to counts 1, 2, 3,

6

4, 5, 7, 8, 9, & 11," and "No as to counts 6, 10 & 12."[1]  *Id.*  In other words, the

parties stipulated that the government only had to prove that the girls were *actually*

*minors* to obtain a guilty verdict on the travel, receipt, and possession charges—*not*

the production of child pornography charges, or the attempted travel charge.

The jury convicted Lynch on all counts.  Lynch now appeals.

## II.

## A.

Lynch first contends that the government failed to introduce sufficient

evidence that Liza, Erica, Rica, and Denise were under 18 years old or that he

traveled with the intent to commit illicit sex acts.  We review a challenge to the

sufficiency of the evidence de novo, viewing "the evidence in the light most

favorable to the government."  *United States v. Mercer*, 541 F.3d 1070, 1074 (11th

Cir. 2008).  All "reasonable inferences and credibility choices are made in the

government's favor."  *Id.*  Evidence is sufficient if "a reasonable jury could have

found the defendant guilty beyond a reasonable doubt."  *Id.*

A person commits the crime of production of child pornography when he

"employs, uses, persuades, induces, entices, or coerces any minor to engage in . . .

---

[1] The government may have conceded too much on Count 6, which charged Lynch with traveling in foreign commerce with the intent to engage in a sexual act with a minor.  We have said that convictions "for travel in interstate commerce with intent to engage in a sexual act with a minor in violation of 18 U.S.C. § 2423(b) do not require the existence of an actual minor victim." *United States v. Farley*, 607 F.3d 1294, 1325 (11th Cir. 2010).

any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). Importantly, § 2251 criminalizes both actual and attempted production of child pornography. The crime of "attempted production of child pornography" under § 2251(a) and (e) "does not require an actual minor victim," so long as the defendant "believed [the victim] to be" underage. *United States v. Lee*, 603 F.3d 904, 912–13 (11th Cir. 2010) (upholding a conviction under § 2251 where the defendant attempted to use and persuade a fictitious minor, invented as part of a sting operation, to engage in sexually explicit conduct for the purpose of producing child pornography).

At trial, Lynch conceded that Counts 1-5 and 7-9 did not require an actual minor victim, and that the jury could find him guilty if he believed the girls to be underage. On appeal, Lynch does not even contest that the evidence was sufficient to conclude that he *believed* his victims to be minors—and that is just as well, because the evidence for that proposition is overwhelming. Instead, for the first time on appeal, he argues that deficiencies in the indictment and jury instructions required the government to prove *actual* production of child pornography, not *attempted* production. These new arguments are meritless and likely waived—the indictment alleged that Lynch "did use and persuade *and attempt to use and persuade* a minor" to engage in sex acts for child pornography, and Lynch explicitly agreed in response to the jury's written question that the government did

8

not need to prove actual age in order to prevail on those counts. But we need not dwell on these new arguments, because in any event, a reasonable juror could have concluded from the evidence that Liza, Erica, Rica, and Denise were minors.

In addition to introducing Lynch's own statements about the girls' ages, the government called a pediatrician, Dr. Lambert, as an expert witness. He testified that Liza was "early-ish in puberty," Erica was "nowhere close to being to the end of puberty," Rica was "not done with puberty yet," and Denise was "[e]arly in puberty"—and that 99% of human females still in puberty are under the age of 18. Even Lynch's own expert, who testified only for the proposition that doctors can make mistakes in assessing the ages of women depicted in pornography, refused to testify that Liza, Erica, Rica, or Denise were over the age of 18. When shown a photo of Denise, he said, "Looks like a child."

Most importantly, the jury also saw dozens of photographs and videos—both pornographic and nonpornographic—of all four girls. The jury could reasonably have concluded, based on its own judgment and perception, that Lynch's victims were minors. *Cf. United States v. Smith*, 459 F.3d 1276, 1287 (11th Cir. 2006) (stating that "reasonable inferences that could be drawn" from "actual photographs" supported a jury finding that "the victim was so obviously a minor that the defendant must have known as much"). Lynch has given this Court no reason to think otherwise.

9

There was also sufficient evidence to support a finding that Lynch traveled to the Philippines with the intent to engage in illicit sexual conduct with a minor in 2006, and that he was attempting to travel to the Philippines with the intent to engage in illicit sexual conduct with a minor when he was stopped at the airport by the FBI in December 2016. As to the 2006 offense, there was evidence that Lynch made arrangements with Erica's pimp in advance of his visit. And as to the 2016 offense, Lynch and Rose communicated in detail about what sex acts he and Denise would perform. Lynch also kept a calendar, in which he had January 7-10, 2017 blocked off for "Rose Denise." Finally, he was apprehended while boarding a flight with a bag full of male performance drugs, candy, and sex toys. There was sufficient evidence for the jury to conclude that Lynch was traveling to the Philippines in order to engage in sexual conduct with Denise, who he believed had just turned 13.

## B.

Second, Lynch argues that the trial court abused its discretion by failing to give a limiting instruction with regard to hearsay statements contained in Lynch's videos and online chat messages. We review the district court's refusal to give a limiting instruction for abuse of discretion. *United States v. Gonzalez*, 975 F.2d 1514, 1516 (11th Cir. 1992). Even if the ruling was an abuse of discretion, "it will not result in a reversal of the conviction if the error was harmless." *United States*

*v. Docampo*, 573 F.3d 1091, 1096 (11th Cir. 2009).  An error is harmless and

"does not warrant reversal if the purported error had no substantial influence on the

outcome" of the trial and "sufficient evidence uninfected by error supports the

verdict."  *United States v. Fortenberry*, 971 F.2d 717, 722 (11th Cir. 1992).

If a court admits evidence that is admissible for one purpose but

inadmissible for another, and the defendant makes a "timely request" for a limiting

instruction, the court "must restrict the evidence to its proper scope and instruct the

jury accordingly." Fed. R. Evid. 105.  Here, the court allowed in statements about

the alleged victims' ages that were admissible to prove Lynch's state of mind, but

inadmissible to prove that his victims were minors.  The government argues that

some of the statements at issue may have been admissible under well-established

hearsay exceptions; in some cases, for instance, Lynch "manifested that [he]

adopted or believed [them] to be true." Fed. R. Evid. 801(d)(2)(B).  But hearsay

exceptions at best account for some, not all, of the statements about age submitted

to the jury.  Accordingly, the district court likely erred when it denied Lynch's

request for a limiting instruction.

Nevertheless, any error here was harmless.  As we explained at length in

addressing Lynch's first claim, there was sufficient admissible evidence that

Lynch's victims were minors—including expert testimony, the admissible chat

messages, and the many photos and videos of the victims.  We cannot say that

hearsay within the chat transcripts had a substantial influence on the outcome of the trial, so the error does not warrant reversal.

**AFFIRMED.**

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

August 14, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 18-10809-CC
Case Style: USA v. David Lynch
District Court Docket No: 8:17-cr-00037-VMC-AEP-1

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, CC at (404) 335-6179.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion